Guy O. Putnam & others *vs.* Philip E. Bessom & others.

Essex.    April 5, 1935. — June 25, 1935.

Present: Rugg, C.J., Crosby, Pierce, & Qua, JJ.

*Municipal Corporations*, Referendum.    *Swampscott.*

Under St. 1927, c. 300, § 8, a petition for a town referendum in Swamp-
   scott must contain the signatures and addresses of two hundred then
   registered voters exactly as they appear on the official list of such
   voters; signatures on such a petition could not be counted which
   were not made by the voters personally unless disabled to sign, or
   which differed from the official list in the middle initial signed or in
   omitting the middle initial, or in the spelling of the Christian name
   or surname, or in omitting "Junior," or in the use of the initial instead
   of the first or middle given name, or in the use of the full first name
   or the full middle name instead of the initial, or in the street or num-
   ber of the address.
A petition for such a referendum containing less than two hundred valid
   signatures called for no action by the selectmen.

Petition for a writ of mandamus, filed in the Supreme
Judicial Court for the county of Essex on November 2, 1934.

The case was reported by *Lummus*, J., for determination
by the full court.

*J. W. Santry, Jr.*, for the petitioners.

*H. D. Linscott*, for the respondents.

Rugg, C.J.    This is a petition for a writ of mandamus
to compel the selectmen of Swampscott to call a special
town meeting in order to submit to all the voters by refer-
endum ballot an article passed at a representative town
meeting.    The town of Swampscott has adopted St. 1927,
c. 300, a special act authorizing representative town meet-
ings, town meeting members, a referendum, and other
matters.    By § 8 provision is made for submitting to the
registered voters of the town at large "the question or
questions involved" in a vote passed at a representative
town meeting.    One condition precedent for such submis-
sion is that "a petition, signed by not less than two hundred
registered voters of the town, containing their names and

addresses as they appear on the list of registered voters,"
be filed with the selectmen within a specified time, asking
that the question or questions so involved be submitted.
A petition of that nature was filed with the selectmen within
the time limited touching a vote passed at a representative
town meeting. The issue to be decided is whether that peti-
tion was signed as required by the quoted words of § 8.

The case was referred to an auditor. It was heard upon
the report of the auditor and a supplementary agreed state-
ment of facts without other evidence. The relevant facts
are these: The petition was signed with two hundred forty-
six names. Of these, twenty-seven were not the names of
registered voters, eight were not names of registered voters
at the time of filing the petition although they subsequently
became registered voters, and six names were signed not
by the voters but by other persons without there being any
disability on the part of such voters to prevent them from
signing. Manifestly these forty-one could not rightly be
considered as signers of the petition. Of the remaining two
hundred five names, fourteen were not signed with addresses,
and fifty-four were not signed with the names, as they
appeared on the list of registered voters, the same person
being included in five instances in both groups. Therefore,
of the two hundred five names, sixty-three are in question
because, as to these names and addresses on the petition,
there are no identical corresponding names and addresses
on the list of registered voters. As illustrative of these
variations, there are five addresses on different streets and
nine addresses of different numbers on the same street when
compared with the addresses as they appear on the list
of registered voters. The variations in names comprise
numerous differences in, or omission of, the middle initial,
differences in the spelling of the surname, differences in
the spelling of the Christian name, in the omission of
"Junior" and in the use of the initial instead of the first
or middle given name, and in the use of the full first name
or the full middle name instead of the initial. Subject to
the exception of the respondents, the single justice drew
the inference from the auditor's report that these signers

whose names or addresses vary from those shown on the list of registered voters were in fact the registered voters designated in the auditor's report opposite the names of the signers respectively. The single justice reported the case for our determination, stating that so far as the matter rested in discretion he should not decide adversely to the petitioners.

The name of a person is the distinctive characterization in words by which he is known and distinguished from others. Description or abbreviation is not the equivalent of a name. *Conners* v. *Lowell,* 209 Mass. 111, 118. *W. B. Manuf. Co.* v. *Rubenstein,* 236 Mass. 215, 219. *O'Brien* v. *Election Commissioners of Boston,* 257 Mass. 332, 340. *Commonwealth* v. *Gedzium,* 259 Mass. 453, 461. The middle name or intial is a part of the name of a person. *Commonwealth* v. *Snow,* 269 Mass. 598, 600. *Anderson* v. *Qualey,* 216 Mass. 106, 109. *Terry* v. *Sisson,* 125 Mass. 560, 561. See *Monroe Cattle Co.* v. *Becker,* 147 U. S. 47, 58. It has been said that the term "Junior" is no part of the name of a person. *Simpson* v. *Dix,* 131 Mass. 179, 184. *Commonwealth* v. *Parmenter,* 101 Mass. 211, 213. However, it is used to describe and designate a person. *Cobb* v. *Lucas,* 15 Pick. 7. *Boyden* v. *Hastings,* 17 Pick. 200. *Kincaid* v. *Howe,* 10 Mass. 203. Where so used on the list of registered voters, the signature on a petition like the present must correspond.

The words of the governing statute already quoted are clear and unmistakable to the effect that a petition must be signed with the "names and addresses" of two hundred registered voters "as they appear on the list of registered voters." Those words must all be given effect and be interpreted according to the common and approved usage of the language without enlargement or restriction. *See* v. *Building Commissioner of Springfield,* 246 Mass. 340, 342. *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148. *Dexter* v. *Dexter,* 283 Mass. 327, 330. The statutes contain minute directions as to the preparation of the lists of registered voters. The registrars of voters are required to exercise great care in ascertaining the surname, the full

Christian name, and the initials of other names of every
voter, together with his residence.  Provision is made for
the correction of errors and for keeping the lists up to date.
G. L. (Ter. Ed.) c. 51, §§ 36, 37, 38 to 47.  Thus the "names
and addresses" of registered voters "as they appear on
the list of registered voters," as those words are used in
St. 1927, c. 300, § 8, have in the statutory law of the Com-
monwealth a very definite signification.  They refer to lists
put in order by public officers with one specific purpose,
among others, that it be as accurate as possible to the end
that the registered voters may be identified with the mini-
mum of difficulty and with the elimination of possibility
of mistakes.  The meaning of the crucial words of said § 8
is unequivocal and not open to doubt.  There is every
reason why those words should be given their natural
meaning.  The representative town meeting and town meet-
ing members are vested in general with the management of
the town by St. 1927, c. 300.  The object of the referen-
dum petition is to secure review of action taken at the
representative town meeting.  Signing a petition to that
end is no idle ceremony but the performance of an important
civic function not to be lightly undertaken.  The selectmen
must move with some dispatch in calling a special meeting
in response to a proper petition.  The manifest purpose of
the statute is to enable the selectmen to ascertain, by com-
parison of the names and addresses given on the petition
with those appearing on the list of registered voters, whether
the petition is genuine, is in conformity to the statute, and
requires them to put the town to the expense of calling the
special meeting of all the registered voters and preparing
the printed ballots for use at such meeting.  The plain im-
plication of the words of the statute is that the signers of
the petition must comply with its words.  The burden is
not cast upon the selectmen of undertaking an investiga-
tion to determine whether the signers are really registered
voters.  They may rely upon comparison of the names and
addresses of the signers as shown by the petition with those
on the list of the registered voters.  In general, practical
considerations require conformity to the statutory require-

ments before a referendum on municipal measures can be enforced. *Kelty* v. *City Clerk of Lowell*, 223 Mass. 369. *Dooling* v. *City Council of Fitchburg*, 242 Mass. 599. *Carriere* v. *Registrars of Voters of Fitchburg*, 257 Mass. 287. The case at bar is distinguishable from *Mount Washington* v. *Cook*, 288 Mass. 67, where it was held with some hesitation that the completing referendum petition furnished for the signers by the Secretary of the Commonwealth was in substantial compliance with the Constitution, and from election cases like *Parrott* v. *Plunkett*, 268 Mass. 202, and *Swift* v. *Registrars of Voters of Milton*, 281 Mass. 264.

The result is that the petition filed with the selectmen was not signed by two hundred "registered voters of the town, containing their names and addresses as they appear on the list of registered voters." The respondents rightly refused to call a special town meeting.

*Petition dismissed.*