KARL T. COMPTON & others *vs.* STATE BALLOT LAW COMMISSION.

SAME *vs.* SECRETARY OF THE COMMONWEALTH.

Suffolk.    May 8, 11, 1942. — May 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Constitutional Law,* Initiative.    *State Ballot Law Commission.    Fraud. Secretary of the Commonwealth.    Certiorari.    Practice, Civil,* Report.

No question of discretion was involved on a report, without decision, of a certiorari proceeding upon the petition and the return of the respondent.

Under statutory provisions directed by § 3 of art. 48 of the Amendments to the Constitution, The Initiative, II, respecting certification by registrars of voters of signatures upon an initiative petition, the registrars are bound to rely upon their records as kept according to statute and are not required to investigate outside those records whether persons registered as voters are legally registered as such.

The signature of one of the first ten signers of an initiative petition was not "placed thereon by fraud" within G. L. (Ter. Ed.) c. 53, § 22A, as amended, where he signed more than six months after he had changed his domicil to another city from the one in which he was registered as a voter and in which his name as such was certified on the petition by the registrars of voters, but he signed without intent to deceive or commit a fraud and without other wrongful purpose and in ignorance of his true legal status as a voter, and there was no

"intentional fraud or purpose to deceive" on the part of the other sponsors of the petition.

The State ballot law commission had no jurisdiction under G. L. (Ter. Ed.) c. 53, § 22A, as amended, to determine whether or not one of the first ten signers of an initiative petition, whose signature was not "placed thereon by fraud," was a "qualified voter" within the constitutional requirement where the election commissioners of Boston had certified his name as a registered voter therein.

The Secretary of the Commonwealth has no authority to disregard a certificate by registrars of voters that one of the first ten signers of an initiative petition presented under art. 48 of the Amendments to the Constitution was a registered voter in their municipality.

PETITIONS for a writ of certiorari and for a writ of mandamus, respectively, filed in the Superior Court on March 14, 1942.

The cases were heard by *Williams,* J.

*F. B. Wallis,* (*R. E. Goodwin* with him,) for the petitioners.

*R. Clapp,* Assistant Attorney General, for the respondents.

FIELD, C.J.  These two cases, argued together, relate to the same ultimate issue — whether a measure proposed as a law by initiative petition, being "An Act to allow physicians to provide medical contraceptive care to married persons for the protection of life or health," shall be submitted to the voters at the State election to be held in 1942.  The State ballot law commission, upon objections to the initiative petition, found, among other things, that one of the first ten signers of the initiative petition, Sarah T. Curwood, "was not a person entitled to sign this petition," and stated: "we are, therefore, for this reason alone forced to decree that this initiative petition shall not go on the ballot."  The Secretary of the Commonwealth for a like reason takes the position that it is not his duty to submit the proposed law to the voters at the State election.

One of the cases is a petition for a writ of certiorari, brought in the Superior Court by nine citizens and duly qualified and registered voters in the cities and towns in which they respectively reside, against the commissioners constituting the State ballot law commission, for the purpose of quashing the proceedings before said commission,

above referred to. The other case is a petition for a writ of mandamus, brought in the Superior Court by the same petitioners against the Secretary of the Commonwealth, to command him to submit the proposed law to the people at the next State election. The cases were heard by a judge of the Superior Court and reported by him without decision to this court for its determination. The respondents in the certiorari case filed a return to the petition, and the case comes before us upon the petition and the return thereto. The parties, however, have agreed that the "facts as stated in the respondents' return are true and constitute the entire record of the proceedings of the respondents," and the judge has found the facts to be as so stated. In the mandamus case a statement of agreed facts was filed. No evidence other than that contained therein was introduced by either party, and the judge found the facts to be as stated in the statement of agreed facts. The case comes before us upon the petition, the answer of the respondent, and the statement of agreed facts.

The procedure fixed by the Constitution governing initiative petitions is, in outline, as follows: (a) An initiative petition must "first be signed by ten qualified voters of the commonwealth," (b) and then be submitted to the Attorney General for certification "that the measure is in proper form for submission to the people" and to certain other facts, and, thereafter, (c) be submitted to the Secretary of the Commonwealth who "shall provide blanks for the use of subsequent signers, and shall print at the top of each blank a description of the proposed measure ["to be determined by the attorney-general"] as such description will appear on the ballot together with the names and residences of the first ten signers." (d) The petition must then be "signed by the required number of qualified voters" — "not less than twenty thousand qualified voters" — (e) and filed with the Secretary of the Commonwealth (f) who "shall, upon the assembling of the general court, transmit it to the clerk of the house of representatives" and it "shall then be deemed to be introduced and pending." (g) If the General Court fails to enact such law, the petition must

then be "completed by filing with the secretary of the commonwealth . . . not less than five thousand signatures of qualified voters, in addition to those signing such initiative petition," and (h) "the secretary of the commonwealth shall submit such proposed law to the people at the next state election." Constitution, art. 48 of the Amendments, The Initiative, II, §§ 3, 4, V, § 1; General Provisions, III.

Under the constitutional provisions above outlined, the initiative petition now in question has reached the stage where the proposed law should be submitted to the people at the next State election, unless there has been a failure to conform to the required procedure of such a nature as to preclude such submission. It is not now contended that there has been any such failure except in one respect, namely, that the petition was not "first . . . signed by ten qualified voters of the commonwealth" as required by said art. 48, The Initiative, II, § 3.

First. We consider first the petition for a writ of certiorari brought against the State ballot law commission. Upon this petition, the questions for determination — a return having been filed by the respondents — are whether the commission in making its decision was acting within its jurisdiction, and whether, if it was so acting, there was error of law in its decision. The return is "conclusive as to all matters of fact, within their jurisdiction, passed upon by them." *Tewksbury* v. *County Commissioners*, 117 Mass. 563, 565–566. *Marcus* v. *Street Commissioners of Boston*, 252 Mass. 331, 333. *Walsh* v. *District Court of Springfield*, 297 Mass. 472, 474–475. On a report in this form no exercise of discretion is involved. The only question for decision is whether, as matter of law, relief appropriate to the nature of the proceeding ought to be granted. G. L. (Ter. Ed.) c. 213, § 1A (see St. 1941, c. 180), § 1B (see St. 1939, c. 257); c. 231, § 111; c. 249, § 4. *Whitney* v. *Judge of the District Court of Northern Berkshire*, 271 Mass. 448, 458–459. *Lowry* v. *Commissioner of Agriculture*, 302 Mass. 111, 112.

The "Decree Findings and Opinions" of the State ballot law commission, set forth in its return, contain the following statements: "A protest has been filed to the effect

that one of the ten original signers is not a qualified voter and for that reason the petition should be dismissed. The board finds one of the ten signers was Sarah T. Curwood and this appears in the record; we find as a fact that Sarah T. Curwood was a person possessing the qualifications to vote in this Commonwealth, we find as a fact that she was a registered voter in the city of Boston, we find as a fact on February 1, 1940, she moved from Boston to Cambridge and established her domicile in that city, we find as a fact that on the twenty-third day of August when she signed this petition she had been a resident of Cambridge for over six months and had been away from Boston for over six months, we find as a fact that on August 23, 1940, after she signed this petition her name was certified by the Boston Election Board. . . . The board finds that she was qualified but finds she was not a qualified voter. . . . We find, therefore, that Sarah T. Curwood was not a person entitled to sign this petition. We find that Sarah T. Curwood signed the petition with no wrongful purpose, without any intention to deceive or commit a fraud, that she was ignorant of her true legal status as a voter. We furthermore find all other of the sponsors of the petition were likewise free from any intentional fraud or purpose to deceive in permitting her to sign the original petition, but we do find that because of her mistake in having her name certified as a voter in Boston the Secretary of State was deceived into accepting her as a qualified voter. The provision of the Constitution in Article 48 lays down an imperative condition that an initiative shall be originated by a petition signed by ten qualified voters. In this case, we find that this condition precedent was not met and that the entire petition is illegal 'ab initio' and . . . we are, therefore, for this reason alone forced to decree that this initiative petition shall not go on the ballot."

1. The fundamental inquiry is whether it was within the jurisdiction of the State ballot law commission to determine whether Sarah T. Curwood was entitled to sign the initiative petition as one of the "first ten signers."

The constitutional requirement is that such a signer be

one of the "qualified voters of the commonwealth." Art. 48 of the Amendments, The Initiative, II, § 3. But whether a person is a qualified voter of the Commonwealth depends not only upon an interpretation of these words but also upon a determination of the pertinent facts. See *Capen* v. *Foster*, 12 Pick. 485, 491–492. The constitutional provision relating to such determination of facts is said art. 48, General Provisions, I, entitled "*Identification and Certification of Signatures*": "Provision shall be made by law for the proper identification and certification of signatures to the petitions hereinbefore referred to, and for penalties for signing any such petition, or refusing to sign it, for money or other valuable consideration, and for the forgery of signatures thereto. Pending the passage of such legislation all provisions of law relating to the identification and certification of signatures to petitions for the nomination of candidates for state offices or to penalties for the forgery of such signatures shall apply to the signatures to the petitions herein referred to. The general court may provide by law that no co-partnership or corporation shall undertake for hire or reward to circulate petitions, may require individuals who circulate petitions for hire or reward to be licensed, and may make other reasonable regulations to prevent abuses arising from the circulation of petitions for hire or reward." This constitutional provision does not change the constitutional qualifications for signing an initiative petition but merely provides a method by which the possession of such qualifications by a person may be ascertained. Unless it is ascertained in the prescribed manner that a person signing an initiative petition possesses the constitutional qualifications for such signing, his signature thereon is ineffective and cannot be counted. See *Capen* v. *Foster*, 12 Pick. 485, 489–493; *Opinion of the Justices*, 247 Mass. 583, 586–588.

Pursuant to this constitutional provision for identification and certification of signatures, provision was made by law by G. L. (Ter. Ed.) c. 53, § 22A (see St. 1938, c. 192), as follows: "The provisions of law relative to the signing of nomination papers of candidates for state office, and to

the identification and certification of names thereon and submission to the registrars therefor, shall apply, so far as apt, to the signing of initiative and referendum petitions and to the identification and certification of names thereon, and, except as otherwise provided, to the time of their submission to the registrars. Registrars shall receipt in writing for each initiative or referendum petition submitted to and received by them, and shall deliver such petitions only on receiving written receipts therefor. Objections that signatures appearing on an initiative or referendum petition have been forged or placed thereon by fraud and that in consequence thereof the petition has not been signed by a sufficient number of qualified voters actually supporting such petition, as required by the constitution, may be filed with the state secretary . . . [within a prescribed period]. If upon hearing or otherwise it appears to the state secretary that there is substantial evidence supporting such objections, he shall refer the same to the state ballot law commission, which shall investigate the same, and for such purpose may exercise all the powers conferred upon it relative to objections to nominations for state offices, and if it shall appear to said commission that the objections have been sustained it shall forthwith reject the petition as not in conformity with the constitution and shall notify the state secretary of its action."

Among the pertinent "provisions of law relative to the signing of nomination papers of candidates for state office, and to the identification and certification of names thereon and submission to the registrars therefor," referred to in said § 22A, are the provisions of G. L. (Ter. Ed.) c. 53, § 7, now appearing in St. 1938, c. 341, § 5: "Every voter signing a nomination paper shall sign in person, with his name as registered, and shall state his residence on January first preceding, and the place where he is then living, with the street and number, if any . . . [with an exception not here material]. Every nomination paper of a candidate for a state office . . . shall be submitted . . . to the registrars of the city or town where the signers appear to be voters. In each case the registrars shall check each

name to be certified by them on the nomination paper and shall forthwith certify thereon the number of signatures so checked which are names of voters both in the city or town and in the district for which the nomination is made, and only names so checked shall be deemed to be names of qualified voters for the purposes of nomination. The registrars need not certify a greater number of names than are required to make a nomination, increased by one fifth thereof." (In the city of Boston the election commissioners perform the duties and exercise the powers, so far as here material, of registrars of voters, St. 1913, c. 835, § 8; G. L. [Ter. Ed.] c. 50, § 1; c. 51, § 15, and references hereinafter to registrars of voters applicable to the city of Boston are to the election commissioners of the city.) General Laws (Ter. Ed.) c. 51, § 36, as amended by St. 1933, c. 254, § 12, provides that the registrars "shall keep in general registers, records of all persons registered as qualified to vote in the city or town" (see, as to the city of Boston, St. 1913, c. 835, § 82, as amended), and § 37, as finally amended by St. 1939, c. 369, § 2, provides that the "registrars, after April first, shall prepare an annual register containing the names of all qualified voters in their city or town for the current year, beginning with January first. Such names shall be arranged in alphabetical order, and, opposite to the name of each voter, shall be placed his residence on January first preceding or on any subsequent day when he became an inhabitant of the city or town." See, as to the city of Boston, St. 1913, c. 835, § 76. Said § 37 as amended contains detailed provisions governing the entry of names in the annual register (see also §§ 42–47); and § 38 provides for the revision and correction of registers by the registrars "in accordance with any facts which may be presented to them," but provides that, "after the name of a voter has been placed upon the current annual register, they shall not change the place of residence as given thereon, nor, unless the voter has died, strike such name therefrom, until they have sent him a notice of their intention so to do, naming a certain day when he may be heard"; and §§ 48–49 provide for the filing of a complaint with the

registrars that a person has been "illegally or incorrectly registered" and for an opportunity for "the person complained of to appear before them . . . to answer to the matters set forth in the complaint." Compare St. 1939, c. 450, § 4.

It is apparent that the governing provisions for the "identification and certification of signatures" of the Constitution and the statutes passed thereunder rest upon the statutory system of registration. Such statutory system is a part of the provisions for "identification and certification of signatures." The Constitution so contemplated. By the terms of the constitutional provision relating to "identification and certification of signatures," until the passage of legislation upon the subject the "provisions of law relating to the identification and certification of signatures to petitions for the nomination of candidates for state offices" were to apply to signatures upon initiative and referendum petitions, art. 48 of the Amendments, General Provisions, I, and the provisions so made applicable were based upon a statutory system of registration. See St. 1913, c. 835, § 199, as amended by St. 1917, c. 82, § 1, and St. 1918, c. 122, § 1. Moreover, the Constitution expressly recognizes registration by providing, with respect to the certification of signatures on initiative and referendum petitions, that "Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county." Art. 48 of the Amendments, General Provisions, II.

Furthermore, it is apparent from the statutory provisions above outlined that the checking and the certification by the registrars of voters of names on an initiative petition are a checking and a certification of the names of persons registered as voters as shown by the records of the registrars, particularly by the current annual register that is kept by them. The provision — which is "apt" with respect to the signing of an initiative petition, G. L. (Ter. Ed.) c. 53, § 22A, as amended — that a voter shall sign a nomination paper "with his name as registered" and state "his residence on January first preceding" as well as "the place where he is then living," G. L. (Ter. Ed.) c. 53, § 7,

as amended, is for the purpose of enabling the registrars to ascertain, without a burdensome investigation, by comparing such name and residence with the names and residences appearing in the current annual register, whether the name purporting to be signed to the initiative petition is the name of a registered voter. See *Putnam* v. *Bessom,* 291 Mass. 217, 219–220. The sole function of the registrars is to check and certify the names upon an initiative petition that are the names of registered voters. In so certifying, the registrars are not required to investigate whether persons registered as voters are legally registered as such. The registrars are entitled — indeed, are bound — to rely upon their records. It is true that under § 38 of G. L. (Ter. Ed.) c. 51, it is the duty of registrars to revise and correct the current annual register "in accordance with any facts which may be presented to them." But the statutes provide the method by which such revision and correction is to be made, and a name cannot be struck from the register by them without the person registered as a voter having an opportunity to be heard. And unless a name is struck from the register in the statutory manner, it is the duty of the registrars to check and certify his name on an initiative petition as the name of a registered voter.

It follows from the principles above stated, and from the facts found by the State ballot law commission, that the name of Sarah T. Curwood, appearing as one of the "first ten signers" of the initiative petition in question, was properly certified by the election commissioners of the city of Boston as a registered voter in that city since her name so appeared upon their records.

By virtue of the certification of the election commissioners of the city of Boston properly made, as already stated, that Sarah T. Curwood was a registered voter in that city, she was, at least prima facie, entitled to sign the initiative petition as one of the "first ten signers" thereof, see *Harris* v. *Whitcomb,* 4 Gray, 433, 435, since her being such a registered voter imported that she was one of the "qualified voters of the commonwealth" who under the Constitution was entitled to sign an initiative petition.

We thus reach the crucial issue of the case whether it was within the jurisdiction of the State ballot law commission to determine the fact whether Sarah T. Curwood was a qualified voter of the Commonwealth notwithstanding the certification of the election commissioners of the city of Boston that, according to their records, she was a registered voter in that city.

The jurisdiction of the State ballot law commission with respect to initiative petitions, as well as with respect to referendum petitions, is fixed by G. L. (Ter. Ed.) c. 53, § 22A (see St. 1938, c. 192) and is limited thereby to "Objections that signatures appearing on an initiative or referendum petition have been forged or placed thereon by fraud and that in consequence thereof the petition has not been signed by a sufficient number of qualified voters actually supporting such petition, as required by the constitution," referred to the commission by the Secretary of the Commonwealth, although with respect to such objections the commission "may exercise all the powers conferred upon it relative to objections to nominations for state offices." The statute relating to objections to nominations for State offices that are to be considered by the State ballot law commission is in broad terms, referring generally to "Objections to nominations for state offices, and all other questions relating thereto." G. L. (Ter. Ed.) c. 53, § 12, as finally amended by St. 1939, c. 166. Whatever may be the scope of the objections to nominations that are within the jurisdiction of the State ballot law commission, this broad language does not extend the jurisdiction of the commission with respect to objections to initiative petitions beyond the scope of the objections specifically described in G. L. (Ter. Ed.) c. 53, § 22A as amended. The provisions of said § 22A incorporating provisions relating to nomination papers, "so far as apt," do not apply where it is "otherwise provided," and it is "otherwise provided" with respect to objections to initiative petitions by the express language of said § 22A limiting objections within the jurisdiction of the State ballot law commission to objections of the two classes therein described.

Nothing in the Constitution, in the context of said § 22A, or any pertinent statute, or in the apparent purpose of the Constitution or statutes warrants an interpretation of the provision of said § 22A, relating to objections to signatures different from the natural meaning of the words of the provision. The specific grounds of objections to initiative petitions cognizable by the State ballot law commission are grounds upon which the registrars could not pass on the basis of their records. The registrars could determine from their records only whether the names signed to an initiative petition were the names of registered voters in their city or town. They could not determine whether the signatures on the petition had been "forged" or had been "placed thereon by fraud." The Legislature, by said § 22A, recognized, as is obvious, that with respect to these matters the statutory system of registration did not provide sufficient safeguards. And the Constitution, in art. 48 of the Amendments, General Provisions, I, indicates that there should be safeguards with respect to matters of this nature. But there is nothing in the Constitution to indicate that a system of registration may not provide sufficient safeguards against the signing of initiative petitions by persons who are not "qualified voters of the commonwealth."

It is clear that the objection to the signature of Sarah T. Curwood is not an objection on the ground that her signature had been "forged" and for that reason within the jurisdiction of the State ballot law commission. The jurisdiction of the commission, if it existed, rested on the ground that the signature of Sarah T. Curwood was "placed" on the petition "by fraud." The findings of the commission on this matter were "that Sarah T. Curwood signed the petition with no wrongful purpose, without any intention to deceive or commit a fraud, that she was ignorant of her true legal status as a voter. . . . [that] all other of the sponsors of the petition were likewise free from any intentional fraud or purpose to deceive in permitting her to sign the original petition, but . . . that because of her mistake in having her name certified as a voter in Boston

the Secretary of State was deceived into accepting her as a qualified voter."

The "true legal status as a voter" of Sarah T. Curwood, as those words are used by the commission in its findings above set forth, was, according to these findings, that "she was qualified but . . . was not a qualified voter" for the reason that though "she was a registered voter in the city of Boston . . . she moved from Boston to Cambridge and established her domicile in that city" on February 1, 1940, more than six months — six months and twenty-two days — before she signed the initiative petition on August 23, 1940. This conclusion of the commission as to the "true legal status" of Sarah T. Curwood obviously was based upon art. 3 and art. 30 of the Amendments to the Constitution of the Commonwealth whereunder a person is not qualified to vote in a city or town for State offices after the expiration of six months from his removal from the city or town.

The findings of the State ballot law commission do not show that the signature of Sarah T. Curwood was "placed" upon the initiative petition "by fraud." She signed the initiative petition, as the respondents' return discloses, in the manner prescribed by law (G. L. [Ter. Ed.] c. 53, § 7, now appearing in St. 1938, c. 341, § 5), with her "name as registered" and with a statement of her residence in Boston on January first preceding, and a statement that at the time of signing she was living in Cambridge. She made no misrepresentation of fact, unless such a misrepresentation is to be implied from the mere fact of her signing the petition. And she "signed the petition with no wrongful purpose, without any intention to deceive or commit a fraud" and "was ignorant of her true legal status as a voter." However mistaken Sarah T. Curwood may have been as to her "true legal status" and her right to sign the initiative petition, the facts found by the commission do not show "fraud" on her part, as that word is ordinarily understood. See *Commonwealth* v. *O'Brien*, 305 Mass. 393, 397–398. She merely exercised a supposed right without fraudulent intent. Compare *Commonwealth* v. *Connelly*,

163 Mass. 539, 542. Fraud in signing the initiative petition cannot be attributed to Sarah T. Curwood on the ground that she was presumed to know the law with respect to her right to sign the petition. Nor can the mere signing of an initiative petition by her, in ignorance of the fact — as the commission purported to find — that she was not entitled to do so, be regarded as an act in its nature designed to induce improper action by public officers and for this reason amounting to fraud. Compare *McLearn* v. *Hill*, 276 Mass. 519, 527. While we do not intimate that a signature may not be "placed" on an initiative petition "by fraud" of the signer, the fact, that the provision of the statute relating to signatures being "placed thereon by fraud" is a part of the provision relative to signatures being "forged or placed thereon by fraud," tends to show that the evils to which the provision as a whole was directed were evils of the same general nature, the placing of signatures upon a petition by persons other than the voter or by voters induced to do so by fraud. The possibility of the existence of evils of this general nature is recognized in the Constitution. Art. 48 of the Amendments, General Provisions, I. Compare G. L. (Ter. Ed.) c. 53, § 22B; St. 1938, c. 191. In any event, a signature to an initiative petition by a registered voter in a city or town without wrongful purpose, in ignorance of the fact that he is not entitled to be registered therein for the reason that he is not one of the "qualified voters" therein, and in ignorance of the fact that he is not entitled to sign such petition as one of the "qualified voters of the commonwealth," cannot be said to be "placed" on the initiative petition "by fraud" of the signer. (For the purpose of this discussion we assume, without decision, contrary to the contention of the petitioners, that a person having the constitutional qualifications of a voter is not entitled to sign an initiative petition if he is not registered in the city or town in which, if so registered, he would be entitled to vote as a qualified voter therein. Arts. 3, 30, of the Amendments.) Furthermore, on the facts found the signature of Sarah T. Curwood on the initiative petition was not procured by the fraud

of any other person. We conclude, therefore, that the State ballot law commission was without jurisdiction to determine the fact whether Sarah T. Curwood was a qualified voter of the Commonwealth entitled to sign the initiative petition as one of the "first ten signers" thereof, and that its decision that she was not so entitled is without effect.

It follows from what has been said that, for the purpose of signing the initiative petition as one of the "first ten signers" thereof, Sarah T. Curwood must be deemed, by virtue of the certification of her name by the election commissioners of the city of Boston, to have been one of the "qualified voters of the commonwealth."

It may seem that the conclusion here reached renders the provisions for passing laws by the initiative or referendum process without adequate safeguards. But it was in the power of the Legislature, acting within its constitutional powers, to provide for the identification and certification of signatures upon initiative and referendum petitions. And the Legislature has seen fit to leave that matter, so far as the possession of the qualifications for signing initiative or referendum petitions is concerned, to the system of registration according to which the registrars have ample power to revise and correct the current annual register, and for that purpose to determine whether persons are qualified voters in a city or town, without provision for review by any other officer or officers. The determination of the question whether a person is a qualified voter in a city or town, particularly where it depends upon the length of his residence therein, may be a matter of considerable difficulty, as was recognized in *Blanchard* v. *Stearns*, 5 Met. 298, 303–304. The Legislature may have concluded that it was in the interest of the initiative and the referendum processes for the passing of laws, where many signatures are involved, that the records of the registrars should be conclusive, rather than that there should be review by the State ballot law commission of matters of fact affecting the qualifications of each of the signers of an initiative or referendum petition. That the Legislature so determined with respect to the negative aspect of the subject is clear from

G. L. (Ter. Ed.) c. 53, § 7, now appearing in St. 1938, c. 341, § 5, applicable to nomination papers, and "apt" with respect to initiative and referendum petitions, providing for the checking and certification of signatures, and providing further that "only names so checked shall be deemed to be names of qualified voters for the purposes of nomination." This language does not necessarily import that the converse thereof is true, that "names so checked shall be deemed to be names of qualified voters," though it is reasonably susceptible of that interpretation. The same result, however, is reached by the failure of the Legislature to provide for any review of the checking of names by registrars as the names of registered voters — impliedly the names of qualified voters.

2. Since the decision of the State ballot law commission that Sarah T. Curwood was not entitled to sign the initiative petition is without effect, and that decision is the sole ground upon which the commission rejected the initiative petition as not in conformity with the Constitution (see G. L. [Ter. Ed.] c. 53, § 22A as amended), such rejection, as stated by the commission that "we are . . . for this reason alone forced to decree that this initiative petition shall not go on the ballot," cannot stand. In view of this conclusion it is unnecessary to consider whether, if the decision that Sarah T. Curwood was not entitled to sign the petition had been within the jurisdiction of the State ballot law commission, this fact would vitiate an initiative petition that, as appears from the return of the respondents, had upon it "some 44,000 certified signatures . . . and . . . had been through all stages of the Legislature." The proceedings of the State ballot law commission must be quashed so far as the commission thereby purported to decide that Sarah T. Curwood "was not a person entitled to sign this petition" and "to decree that this initiative petition shall not go on the ballot." G. L. (Ter. Ed.) c. 249, § 4.

Second. We consider second the petition for a writ of mandamus against the Secretary of the Commonwealth to command him to submit the proposed law to the people at

the next State election. This case was heard upon a statement of agreed facts which embodies substantially the facts appearing in the return of the State ballot law commission to the petition for a writ of certiorari, already considered. The slight differences in the facts in the two cases need not be pointed out as they do not affect the result.

The Secretary of the Commonwealth contends that he is not required to submit the proposed law to the people at the next State election solely by reason of the fact that Sarah T. Curwood, one of the "first ten signers" of the initiative petition, was not a qualified voter of the Commonwealth and entitled to sign the initiative petition as one of the "first ten signers."

The Secretary relies, in the first instance, on the decision of the State ballot law commission, already considered upon the petition for a writ of certiorari, that Sarah T. Curwood was not a person entitled to sign the initiative petition and that the initiative petition should not go upon the ballot. Since, as already decided, that decision is without effect and must be quashed, it furnishes no defence to the Secretary in this proceeding.

The Secretary, however, contends further that, apart from the decision of the State ballot law commission, the initiative petition is fatally defective for the reason that Sarah T. Curwood was not entitled to sign the petition as one of the "first ten signers" thereof. Doubtless, in performing the administrative duties imposed upon him, the Secretary has jurisdiction to make various determinations affecting an initiative petition, such, for example, as whether such a petition at its several stages has a sufficient number of signatures checked and certified by registrars in accordance with the statutes governing identification and certification of signatures herein set forth. But he has no greater authority than the State ballot law commission to disregard such checking and certification, and to determine that names so checked and certified as registered voters are not "qualified voters of the commonwealth." Consequently, he has no authority to refuse to submit the proposed law to the people at the next State election on the ground that Sarah

T. Curwood was not entitled to sign the initiative petition for such proposed law as one of the "first ten signers" thereof.

It follows that upon this record the Secretary of the Commonwealth is required to submit the proposed law to the people at the next State election, and a writ of mandamus must issue commanding him to do so.

Upon the petition for a writ of certiorari against the State ballot law commission an order is to be entered quashing the proceedings of the commission so far as it purported to decide that Sarah T. Curwood "was not a person entitled to sign this petition" and "to decree that this initiative petition shall not go on the ballot," and upon the petition for a writ of mandamus against the Secretary of the Commonwealth such a writ is to issue commanding him to submit the proposed law to the people at the next State election.

*So ordered.*