JOHN M. CARPENTER & others *vs.* REGISTRARS OF VOTERS OF MARLBOROUGH & others.

Middlesex.    January 3, 1951. — March 14, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Municipal Corporations*, Referendum.

The provisions of G. L. (Ter. Ed.) c. 53 as to State wide referendum petitions are not applicable to city referendum petitions presented under c. 43, § 42 as amended, § 38.

Signatures of registered voters on a city referendum petition presented under G. L. (Ter. Ed.) c. 43, § 42 as amended, § 38, must conform to the names as appearing on the voting list in order to be certified.

PETITION for a writ of mandamus, filed in the Superior Court on August 16, 1948.

After hearing, *Fairhurst,* J., ordered the petition dismissed and reported the case.

*E. T. Simoneau,* for the petitioners.

*W. J. Paquet,* (*R. S. Temple* with him,) for the respondents.

SPALDING, J.   By the acceptance of St. 1922, c. 275, the city of Marlborough adopted, with variations not here material, the Plan B form of city government now appearing in G. L. (Ter. Ed.) c. 43, §§ 1–45 and 56–63, inclusive.   On July 6, 1948, the city council of Marlborough passed an ordinance providing for the installation of parking meters on certain streets within the city and the collection of parking fees in connection therewith.   Purporting to act pursuant to G. L. (Ter. Ed.) c. 43, §§ 42 and 38, the petitioners, three registered voters of Marlborough, filed with the city clerk on July 23 a referendum petition bearing the signatures of one thousand two hundred two persons, allegedly registered voters of the city, in an effort to suspend the operation of that ordinance.   The indorsement required by § 38 was not physically attached to the petition but was on a separate paper filed about an hour later.   At the time of

the filing of the petition there were in the city of Marl-borough eight thousand four hundred thirty-two registered voters. Twelve per cent thereof (the number required to sign a referendum petition) amounted to one thousand eleven. Pursuant to § 38 the registrars of voters examined the petition and certified eight hundred ten signatures, amounting to only nine and six tenths per cent of the registered voters. Three hundred ninety-two signatures were rejected.

On August 16, 1948, this petition was brought in the Superior Court for a writ of mandamus joining as respondents the registrars of voters and the members of the city council, and seeking, among other things, to compel the registrars to reëxamine the referendum petition, to certify the rejected signatures, to reascertain by what number and percentage of registered voters the petition was signed, and to correct their certificate in other ways which need not be detailed. The relief sought against the members of the city council is that they reconsider the ordinance and either rescind it or submit it to the voters.

At the hearing the judge found the facts as set forth above. From other facts agreed upon by the parties and found by the judge it appeared that ninety-two of the signatures were properly not certified; that thirty-four more represented registered voters who had given the wrong addresses contrary to G. L. (Ter. Ed.) c. 43, § 38; that eight others were duplicate signatures; and that six ought to have been certified. This leaves the petition with eight hundred sixteen of the necessary one thousand eleven signatures. Two hundred fifty-two signatures are disputed, of which the petitioners need one hundred ninety-five. By agreement of the parties in open court the two hundred fifty-two disputed signatures are in fact those of registered voters of the city, but the names as appearing on the petition differ from the names as registered on the voting lists. There are fourteen categories of such variations, consisting of (1) an initial omitted, (2) an initial included, (3) wrong ward, (4) "Jr." omitted, (5) "Jr." included, (6) abbreviation of given name, (7) ini-

Carpenter *v.* Registrars of Voters of Marlborough.

tials only, (8) change in spelling of given name, (9) wrong initial, (10) Mr. and Mrs. added, (11) middle name in full, (12) omitted first name, (13) "S" added to surname, and (14) full middle name instead of initial. There is no means of telling from the record how many of the disputed signatures fell into any given category.

The judge made numerous rulings in favor of the petitioners,[1] indicated his willingness to exercise in their favor any discretion he might have, but dismissed the petition because mandamus was not the proper remedy. Being of opinion that his rulings should be passed on by this court he reported the case on the pleadings and his findings of fact. The referendum petition and voting registration lists were not made part of the record.

Whether the judge was correct in dismissing the petition on the ground that mandamus would not lie need not be determined, for we are of opinion that on the merits the petitioners were not entitled to prevail. The underlying question is whether the signatures on the petition must conform exactly to the names appearing on the voting lists or whether it is sufficient if they are in fact the signatures of persons whose names appear on those lists. General Laws (Ter. Ed.) c. 43, § 42, as amended by St. 1935, c. 68, § 2, provides, "If, within twenty days after the final passage of any measure . . . by the city council . . . a petition signed by *registered voters* of the city, equal in number to at least twelve per cent of the total number of *registered voters*, is presented to the city council . . . protesting against such measure . . . taking effect, the same shall thereupon and thereby be suspended from taking effect . . ." (emphasis

---

[1] The rulings were as follows: "1. That the provisions of Chapter 53 of the General Laws are not applicable to this protest petition. 2. That the protest petition was signed by at least 12% of the registered voters of the City of Marlborough. 3. That it bore a suitable endorsement as provided by Section 38 of Chapter 43 of the General Laws at the time of filing. 4. That the endorsement was a substantial compliance with the statute. 5. That the failure to attach the endorsement to the petition does not bar the petitioners from relief. 6. That the petitioners have fully complied with Sections 38 and 42 of Chapter 43 of the General Laws as amended. 7. That mandamus is not the form of procedure for these petitioners to obtain redress, since mandamus 'compels' rather than 'reviews' action."

supplied). It thereupon becomes the duty of the city council to reconsider the measure, and, if it is not rescinded by them, to submit it to a vote of the registered voters, such measure to become void unless a majority of the registered voters voting thereon vote in favor of it. The procedure applicable to initiative petitions in § 38 is made applicable to the referendum petition provided for in § 42.

General Laws (Ter. Ed.) c. 43, § 38, reads, "Signatures to . . . [referendum] petitions need not be all on one paper. All such papers pertaining to any one measure [protested against] shall be fastened together and shall be filed in the office of the city clerk as one instrument, with the endorsement thereon of the names and addresses of three persons designated as filing the same. With each signature to the petition shall be stated the place of residence of the signer, giving the street and number, if any. Within five days after the filing of said petition the registrars of voters shall ascertain by what number of *registered voters* the petition is signed, and what percentage that number is of the total number of registered voters, and shall attach thereto their certificate showing the result of such examination" (emphasis supplied). This certificate the city clerk is under a duty to transmit to the city council.

Confessedly these sections do not expressly require the signatures to conform to the names as they appear on the voting lists. They were originally enacted by St. 1915, c. 267, Part I, §§ 39 and 42. The committee report thereon is silent on the degree of conformity required (Senate Document #254 of 1915, at pages 22–23).

The corresponding provisions of the statutes relating to State wide referendum petitions are G. L. (Ter. Ed.) c. 53, § 7, as most recently amended by St. 1943, c. 334, § 3, and, as appearing at the time of this case, G. L. (Ter. Ed.) c. 53, § 22A, as amended by St. 1943, c. 51. See *Compton* v. *State Ballot Law Commission*, 311 Mass. 643, 651–652; *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 238–239. Section 7, read with § 22A, provides, "Every voter

signing a . . . [referendum petition] shall sign in person, *with his name as registered,* and shall state his residence on January first preceding, or his residence when registered if subsequent thereto, and the place where he is then living, with the street and number, if any . . . . Every . . . [referendum petition] shall be submitted to the registrars of the city or town where the signers appear to be voters . . . . In each case the registrars shall check each name to be certified by them on the . . . [referendum petition] and shall forthwith certify thereon the number of signatures so checked which are names of voters . . . and only names so checked shall be deemed to be names of qualified voters for the purposes . . . [of a referendum petition]" (emphasis supplied).[1]

It is plain, we think, that there is no basis for holding that the State wide referendum provisions of c. 53 are applicable to proceedings under G. L. (Ter. Ed.) c. 43, §§ 38 and 42, and the ruling of the judge in that respect was right. And the respondents are not aided by the provisions of G. L. (Ter. Ed.) c. 50, § 6, which have been held not to apply to c. 43. *Gilliatt* v. *Quincy,* 292 Mass. 222, 225.

From the above it would seem that there is a plausible argument that as a matter of strict statutory construction the referendum provisions under G. L. (Ter. Ed.) c. 43 do not require that the signatures on the petitions conform to the names on the voting lists, and that the petition is sufficient if signed by twelve per cent of the persons who are in fact registered voters.

However, such a conclusion would leave certain anomalies in the overall picture relating to referendum petitions. As applied to some of the larger cities in the Commonwealth operating under one of the plans in G. L. (Ter. Ed.) c. 43,

---

[1] Section 7 standing by itself relates to nominations of candidates for State political offices and appears in its original form in St. 1888, c. 436, § 4. It is to be noted that the sections from which § 7 stems did not originally require the signatures on nomination petitions to conform to the names on the voting lists. That provision did not appear until the enactment of G. L. c. 53, § 7. It also should be observed that that portion of § 22A (appearing originally in St. 1924, c. 302, § 1) which applies the procedure of § 7 to State wide referendum petitions was not enacted until St. 1932, c. 80.

which requires signatures of twelve per cent of the registered voters on the referendum petition, the registrars must look outside the voting lists to determine the percentage of registered voters signing the petition, whereas the proper authorities in some of the towns operating under G. L. (Ter. Ed.) c. 43A need only refer to the voting lists to determine whether only three per cent of the registered voters have signed the petition.[1]  Also, as applied to Marlborough, it would mean that the duties of the registrars would be different, depending on whether they were examining a municipal or State wide referendum petition.  As a practical matter it would seem that their duties in either case should be the same and that they may properly refuse to certify a signature unless it conforms to a name on the voting list.  To hold otherwise would require the registrars to make a burdensome investigation on a case like the present and in view of the shortness of time (five days) this would often not be possible.  The construction now placed on §§ 38 and 42 tends to bring these sections into harmony with cognate provisions, insures uniformity on a procedure where uniformity is desirable, and renders the statute more effective in accomplishing the legislative purposes.

It follows that the registrars properly refused to certify all those signatures where a name was abbreviated, where a middle name was given in full and only an initial appeared on the voting list, and where "Jr." was omitted or included.  *Putnam* v. *Bessom*, 291 Mass. 217, 219.  There is no occasion to go farther.  There is nothing at variance with this conclusion in *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230.  As above stated, the petitioners needed one hundred ninety-five of the remaining two hundred fifty-two

---

[1] General Laws (Ter. Ed.) c. 43A, § 10, relating to the submission of certain matters to the voters in towns having the representative town meeting form of government, provides that the referendum petition must be "signed by not less than three per cent of the registered voters of the town, containing their names and addresses *as they appear on the list of registered voters*" (emphasis supplied).  This section was originally enacted as St. 1931, c. 314.  The committee report on this bill offers no clue as to why this degree of conformity between signatures and voting lists was required in this type of municipal government as opposed to the requirements of the bare words of c. 43, § 38 and 42 (Senate Document #10 of 1931, page 8).

signatures still disputed, and the record does not disclose how many signatures are attributable to any given category. There are fourteen categories, and for all that appears two hundred thirty-nine signatures may be in any one of those categories above shown to be defective.

This conclusion makes it unnecessary to determine whether the purported indorsement of the petition satisfied the requirements of G. L. (Ter. Ed.) c. 43, § 38.

*Order dismissing petition affirmed.*