MYER SHARPE[1] & others *vs.* REGISTRARS OF VOTERS OF NORTHAMPTON & others.

Hampshire.     March 8, 1961. — May 9, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Municipal Corporations,* Referendum, Officers and agents. *Certiorari. Practice, Civil,* Parties.

Citizens of a city were proper persons to bring a certiorari proceeding against the registrars of voters to quash the respondents' certification of names on a referendum petition.     [621]

The only proper respondent in a certiorari proceeding is the tribunal whose action is to be examined; but it is customary and proper to hear argument in behalf of one interested without making him a party. [621, 622]

A member of a city council had no standing to appear, plead, or appeal separately from the council as a body in a proceeding in which the council was joined as a party.     [622]

In certifying signatures of "registered voters" of a city on a referendum petition brought under G. L. c. 44, § 8A, the registrars of voters properly rejected signatures not conforming precisely to the names on the voting list; but they improperly rejected signatures, otherwise correctly written, merely because "Mr." or "Mrs." had been added.     [623–624]

PETITION for a writ of certiorari filed in the Superior Court on March 11, 1960, by citizens of Northampton.

The case was heard by *Goldberg,* J.

*Luke F. Ryan,* for Hogan and another, submitted a brief.

*Raymond R. Cross,* for the petitioners.

---

[1] A suggestion has been filed of the death of Suzanne C. deVillafranca, first named in the title of the petition.

Sharpe v. Registrars of Voters of Northampton.

WHITTEMORE, J.   The judge in the Superior Court ordered that a writ of certiorari issue against the respondent registrars of voters of Northampton to quash their certification of names on a referendum petition brought under G. L. c. 44, § 8A,[1] which requires that the petition be signed by "registered voters of the city."   The appellants[2] from that order (Hogan and Murphy) are two of the three registered voters who initiated the referendum petition and who, "no objection being made," had been allowed to "intervene as parties respondent and to defend against the petition."   Hogan also appealed "as he is a city councillor . . . and one of the respondents."   The nine city councillors had been made respondents in order to obtain an interim injunction against action by the council under their vote.   Demurrers of the registrars of voters and the city council, as well as another demurrer by Hogan and three other members of the council, were overruled.   Hogan also claimed an appeal from the interlocutory order of June 7, 1960, overruling the demurrer of the four councillors.   The demurrer of the city council and the separate demurrer of four members specified in effect, among other grounds, misjoinder of parties.   There were no appeals by the city council as such.

The petitioners were proper persons to bring the petition for a writ of certiorari.   *Brewster* v. *Sherman,* 195 Mass. 222, 224.   *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, 92–93.   *Horton* v. *Attorney Gen.* 269 Mass. 503, 508–509.   *Compton* v. *State Ballot Law Commn.* 311 Mass. 643.   *Morrissey* v. *State Ballot Law Commn.* 312 Mass. 121, 123–124.   See *Concord* v. *Attorney Gen.* 336 Mass. 17, 27; *Robinson* v. *Selectmen of Watertown,* 336 Mass. 537, 539. The only proper respondents were the registrars of voters. *Marcus* v. *Commissioner of Pub. Safety,* 255 Mass. 5, 8. *Massachusetts Feather Co.* v. *Aldermen of Chelsea,* 331 Mass. 527, 528–529.

---

[1] Accepted in Northampton on December 5, 1939.

[2] See G. L. c. 213, § 1D.

The four councillors had no standing to appear separately or to demur, and Hogan as one city councillor had no standing to appeal either from the interlocutory order overruling the separate demurrer or from the final order. *New England Box Co.* v. *C & R Constr. Co.* 313 Mass. 696, 701–702. *Kenney* v. *McDonough,* 315 Mass. 689, 693–694. See *Carr* v. *Board of Appeals of Medford,* 334 Mass. 77. There is therefore no appeal before us in respect of any order overruling demurrers. The irregular procedure in joining the city councillors did not destroy the force of the petition for a writ of certiorari. See *Marcus* v. *Commissioner of Pub. Safety,* 255 Mass. 5, 8.

The only appeal from the final order other than Hogan's as city councillor is, as stated, that of Hogan and Murphy as intervening initiators of the referendum petition. The correct practice is "to hear argument from . . . [one interested] without making . . . [him] a party. *Marcus* v. *Commissioner of Public Safety,* 255 Mass. 5, 8." *Massachusetts Feather Co.* v. *Aldermen of Chelsea, supra.* We need not decide whether permission to appear and be heard gives a right of appeal under G. L. c. 213, § 1D, as a "person aggrieved," or the effect of the order for intervention.

The order that the writ issue was right. *Carpenter* v. *Registrars of Voters of Marlborough,* 327 Mass. 183, 187–189. It is true that in the *Carpenter* case the registrars had rejected signatures not conforming precisely to the voting lists, so that the issue was whether by mandamus they could be required to accept them. But the ground and language of the decision are broader than that and conclude the issue. We noted (p. 186) that the corresponding provisions of the statutes relating to State wide referendum petitions (G. L. c. 53, § 7, and § 22A) which specify "his name as registered" were inapplicable, but observed that to hold "that as a matter of strict statutory construction the referendum provisions under G. L. (Ter. Ed.) c. 43 do not require that the signatures on the petitions conform to the names on the voting lists . . . would leave certain anomalies in the overall picture relating to referendum

petitions. . . . [References to G. L. cc. 43 and 43A.] Also, as applied to Marlborough, it would mean that the duties of the registrars would be different, depending on whether they were examining a municipal or State wide referendum petition. As a practical matter it would seem that their duties in either case should be the same and that they may properly refuse to certify a signature unless it conforms to a name on the voting list. To hold otherwise would require the registrars to make a burdensome investigation on a case like the present and in view of the shortness of time (five days) this would often not be possible. The construction now placed on §§ 38 and 42 [of c. 43] [1] tends to bring these sections into harmony with cognate provisions, insures uniformity on a procedure where uniformity is desirable, and renders the statute more effective in accomplishing the legislative purposes. It follows that the registrars properly refused to certify all those signatures where a name was abbreviated, where a middle name was given in full and only an initial appeared on the voting list, and where 'Jr.' was omitted or included. *Putnam* v. *Bessom,* 291 Mass. 217, 219.''

The appellants stress the permissive aspect of the statement in the *Carpenter* case: the registrars "may properly refuse to certify a signature unless it conforms." That language, we think, reflects the issue in that case rather than a limitation on the general principle. There is the additional consideration that it is inadvisable that the fate of referenda petitions depend upon the ability and willingness of registrars in the particular case to determine the necessary identity, or upon the breadth of the rule to guide their judgment which different boards of registrars may in each case adopt.

The appellants are not helped by *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, on which they rely, where a certification under c. 53 was not invalidated in

[1] Section 42 requires "registered voters of the city" as does G. L. c. 44, § 8A. Section 8A incorporates c. 43, § 38. For G. L. c. 43, §§ 38 and 42, in Northampton, see St. 1953, c. 63 (accepted November 3, 1953), inserting §§ 40B and 40F, with other sections, in St. 1883, c. 250.

spite of a variation in the signature of an original signer. The decision as to that signature (p. 239) was that the granting of the writ of certiorari is discretionary and the petitioners were guilty of laches. There is nothing in *Compton* v. *State Ballot Law Commn.* 311 Mass. 643, to the contrary of our holding.

The judge excluded thirty-one signatures because " 'Mr.' or 'Mrs.' [was] added." We think this was an invalid ground of exclusion. The titles were surplusage and did not affect the signatures properly written. Adding these thirty-one signatures to the 1,439 found valid would give only 1,470 and not affect the result, 1,583 being required.[1]

> *Appeals of Hogan as city councillor dismissed.*
>
> *Order for judgment affirmed.*

---

[1] Five signatures were invalidated because " 'Mr.' *and* 'Mrs.' [were] added."  These signatures could not have been counted as the signature of the wife, nor as the signature of the husband, if signed by the wife.  It does not appear whether any was written by the husband and hence, perhaps, valid as his signature.  The point is unimportant in this case.