THOMAS J. NOONAN *vs.* SELECTMEN OF BROOKLINE.

Norfolk.    December 8, 1961. — January 12, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& SPIEGEL, JJ.

*Municipal Corporations,* Officers and agents, Town meeting, Referendum.
  *Public Duty.   Public Officer.   Mandamus.   Practice, Civil,* Parties.

A selectman of a town had no standing as selectman to initiate a man-
   damus proceeding to prevent the board of selectmen from appointing
   assessors under G. L. c. 41, § 25, as amended, but was entitled to main-
   tain the proceeding as a private party concerned in the performance by
   public officers of a public duty.   [462]
A member of a municipal board seeking as a private party petitioner in a
   mandamus proceeding remedial action against the board as such and
   not against the other members of the board as individuals should join
   himself as a party respondent with the others.   [462]
Under G. L. c. 41, § 7, a vote of a town, theretofore electing its assessors,
   to accept c. 41, § 25, as amended, providing for the appointment of
   assessors by the selectmen must be passed at least thirty days before
   the annual town meeting at which the change is to become operative
   but need not be passed at a special town meeting, and if passed at an
   annual town meeting becomes effective at the next annual town meet-
   ing.   [463–464]
Where an article of the warrant for a town meeting was "To see if the
   town will accept Section 25 of Chapter 41 of the General Laws as
   amended, relating to the appointment of assessors, and will determine
   that the number of assessors to be appointed by the selectmen be one,"
   a vote merely that the town accept that section was within the scope of
   the article and was valid notwithstanding the absence of any action on
   the number of assessors to be appointed.   [464]
A vote passed at a representative town meeting of a town theretofore
   electing its assessors, to accept G. L. c. 41, § 25, as amended, providing
   for the appointment of assessors by the selectmen, did not abolish an
   "old" office or establish a "new" one within the meaning of c. 43A, § 10,
   and was not subject to a referendum.   [464–465]
Under a vote, passed at an annual town meeting of a town which since
   its acceptance of St. 1890, c. 386, had had a board of three elected asses-
   sors, to accept G. L. c. 41, § 25, as amended, providing for the appoint-
   ment of assessors by the selectmen, without indication in the vote of the
   number of assessors to be appointed, the number of assessors continued
   at three and the selectmen, from and after the next annual town meet-
   ing following such vote, should appoint all assessors as their terms of
   office severally expired or as vacancies occurred.   [465]

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Norfolk on March 30, 1961.

The case was reserved and reported by *Kirk, J.*, without decision.

*Vincent L. Hennessy, (John P. Mulvihill* with him,) for the petitioner.

*Daniel G. Rollins, (Philip A. Rollins* with him,) for the respondents.

WILKINS, C.J.    This petition for a writ of mandamus is reserved and reported by a single justice, without decision, on the pleadings and on an agreement as to all the material facts.    The petitioner alleges that he is a selectman of the town of Brookline.    The other four selectmen are designated as respondents.    The petition seeks to prevent the selectmen from appointing assessors under G. L. c. 41, § 25, as amended through St. 1937, c. 129, § 2,[1] and questions the validity of the acceptance of that statute at the annual town meeting in March, 1961.

The petitioner in his capacity as selectman has no special standing to initiate this litigation.    See *Carr v. Board of Appeals of Medford,* 334 Mass. 77, 79–81; *State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.* 342 Mass. 58, 59, *Sharpe* v. *Registrars of Voters of Northampton,* 342 Mass. 620, 622.    He can, however, maintain this petition as a private party who is legitimately concerned in the performance by public officers of a public duty.    *Sunderland* v. *Building Inspector of No. Andover,* 328 Mass. 638, 640, and cases cited.    *Kaplan* v. *Bowker,* 333 Mass. 455, 460. *Concord* v. *Attorney Gen.* 336 Mass. 17, 27.

Since remedial action is asked against the selectmen in their official capacity as a board, and not against four fifths of the board as individuals, the petitioner should have joined himself as a party respondent with his colleagues. *Wolf* v. *Hope,* 210 Ill. 50, 58.    *Attorney Gen.* v. *Newell,* 85

---

[1] "In towns which accept this section or have accepted corresponding provisions of earlier laws, the selectmen shall appoint suitable citizens of the town assessors for a term of not more than three years, and may remove them at any time for cause after a hearing.    Upon the qualification of persons so appointed the term of existing assessors of such town shall terminate."

Maine, 246, 251. See *Smith* v. *Board of Appeals of Plymouth*, 340 Mass. 230, 233–234; *Lewis* v. *Board of Councilmen of Frankfort*, 305 Ky. 509, 510–511. See also McQuillin, Municipal Corporations (3d ed.) § 51.59. We shall consider the case as though he had done so, because the result will be the same and unnecessary delay avoided. Of course, any party may make the appropriate motion before final action in the county court.

Brookline has a representative town meeting government under G. L. c. 43A. Since 1891, when the town accepted St. 1890, c. 386,[1] there have been three elected assessors. In 1961 the annual town meeting was held for the election of town officers on March 7 and for the transaction of other business on March 21 and 22. Article 13 of the warrant was: "To see if the town will accept Section 25 of Chapter 41 of the General Laws as amended, relating to the appointment of assessors, and will determine that the number of assessors to be appointed by the selectmen be one." Under this article, upon motion duly made and seconded, it was voted "That the town accept Section 25 of Chapter 41 of the General Laws, as amended, relating to the appointment of assessors." Purportedly pursuant to G. L. (Ter. Ed.) c. 43A, § 10, a petition was filed with the selectmen asking that the question involved in the vote be submitted to the registered voters of the town at large.

1. One objection to the vote made by the petitioner is that acceptance of c. 41, § 25, was not a proper subject of an annual town meeting but could only be accomplished at a special town meeting. The detail of the argument is that a scheme of annual election or appointment of town officers, including assessors, has been established by the Legislature; that this scheme includes the idea that, if there is to be a change in the manner of selection, the change is to be

---

[1] Section 2 of c. 386 reads: "When any town accepts the provisions of this act it shall at the same meeting determine what officers, if any, not required by law to be chosen by ballot shall be so chosen, also the number and terms of such officers; and for this purpose may accept any existing act providing a system or manner of electing any town officers. All such matters shall be notified in the warrant for such meeting. No change shall be thereafter made in the officers to be chosen by ballot or in the number or terms thereof except at a meeting held at least thirty days before any annual town election."

voted at a special meeting held at least thirty days before the annual meeting at which the change is to become operative, thus enabling the official ballot to conform.

The statutes provide for action at least thirty days before the annual meeting at which the change is to become operative, but do not sustain the argument that that action must be taken only at a special town meeting. By the last sentence of St. 1890, c. 386, § 2, quoted in a footnote, *supra,* "No change shall be thereafter made in the officers to be chosen by ballot or in the number or terms thereof except at a meeting held at least thirty days before any annual town election." By G. L. (Ter. Ed.) c. 41, § 2, "Where official ballots are used, the establishment of a new board or office, or the fixing of the term of office of town officers where such term is optional, or the increase or reduction of the number of members of a board, shall be determined at a meeting held at least thirty days before the annual meeting." By G. L. (Ter. Ed.) c. 41, § 7, "No change shall thereafter be made in the officers to be chosen by official ballot, or in the number or terms of office thereof, except at a meeting held at least thirty days before the annual meeting at which such change is to become operative."

It is our conclusion on this part of the case that the vote need not be taken only at a special meeting, but may be taken at an annual meeting and in that event will be effective at the next annual meeting.

2. Another objection of the petitioner is that the vote under article 13 was invalid because the intention of the voters responsible for its insertion in the warrant was to have the town meeting decide whether there should be one appointed full time assessor, and that this essential purpose was omitted from the vote. We think, however, that the vote was within the scope of the article. See G. L. c. 39, § 10 (as amended through St. 1959, c. 64, § 1); *Wood* v. *Jewell,* 130 Mass. 270, 271; *Burlington* v. *Dunn,* 318 Mass. 216, 219.

3. The respondent board's answer contains a prayer by way of declaratory relief (G. L. c. 231A) for a decision whether the vote is subject to a referendum. As to this we

hold in the negative. The action of the town meeting did not fall within the enumerated votes which may be submitted to the registered voters of the town at large under G. L. (Ter. Ed.) c. 43A, § 10.[1] We do not agree that the changing of the office from elective to appointive constitutes the abolition of an old office or the establishment of a new one within the meaning of § 10.

4. The respondent board's answer contains a second prayer by way of declaratory relief for a determination of the number of assessors who may be appointed by the selectmen acting under G. L. c. 41, § 25, as amended. The only change wrought by the 1961 town meeting was to do away with the election of assessors and to substitute a new method of selection. As noted above, this new method will become effective at the annual meeting next following, namely that of 1962, and the number of assessors continues at three as voted in 1891. We assume that the term of one member of the board of assessors will expire at the time of the annual town meeting in 1962. See G. L. c. 41, § 1 (as amended through St. 1961, c. 354, § 1); § 24 (as amended through St. 1953, c. 267, § 2). However that may be, it is an adequate answer to the respondent board's prayer to declare that the selectmen shall appoint all assessors as their terms severally expire or as vacancies occur.

5. In response to the prayers in the answer, declaration is to be made that the challenged vote is valid and not subject to referendum, and that the selectmen shall appoint all assessors as their terms severally expire or as vacancies occur. The petition is to be dismissed.

*So ordered.*

---

[1] "A vote passed at any representative town meeting authorizing the expenditure of twenty thousand dollars or more as a special appropriation, or establishing a new board or office or abolishing an old board or office or merging two or more boards or offices, or fixing the term of office of town officers, where such term is optional, or increasing or reducing the number of members of a board, or adopting a new by-law, or amending an existing by-law, shall not be operative until after the expiration of five days, exclusive of Sundays and holidays, from the dissolution of the meeting. If, within said five days, a petition, signed by not less than three per cent of the registered voters of the town . . . is filed with the selectmen asking that the question or questions involved in such a vote be submitted to the registered voters of the town at large, then the selectmen, after the expiration of five days, shall forthwith call a special meeting for the sole purpose of presenting to the registered voters at large the question or questions so involved. . . ."