EUGENE J. MCCARTHY & others vs. SECRETARY OF THE
COMMONWEALTH & another
(and a companion case[1]).

Suffolk.    September 23, 1976. — January 4, 1977.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, KAPLAN,
& WILKINS, JJ.

*Elections.   Secretary of the Commonwealth.   State Ballot Law Commission.   Jurisdiction, Civil, Election.   Practice, Civil, Parties.*

The State Ballot Law Commission did not have jurisdiction under G. L.
c. 53, §§ 11-12A, 14, of an independent candidate's grievance with
respect to a refusal by the Secretary of State to certify his candidacy under c. 53, § 7 [673-677]; the appropriate method for obtaining review of such a grievance was an action in the Superior Court
under G. L. c. 56, § 59 [677].
In an action under G. L. c. 56, § 59, by an independent candidate challenging the noncertification by local registrars of signatures on nomination petitions, the proper defendant was the Secretary of the
Commonwealth, and the local registrars were not necessary parties.
[677-679] QUIRICO, J., dissenting, with whom REARDON, J., joined.
Where an independent candidate submitted to the Secretary of the
Commonwealth nomination papers containing an adequate number
of signatures to entitle him to a place on the ballot if the signatures
were certifiable, the burden was on the Secretary to show that the
candidate was not entitled to a place on the ballot because fewer
than the required number of signatures were certifiable. [680-684]
QUIRICO, J., dissenting, with whom REARDON, J., joined.
Local registrars, in refusing to certify a signature on a nomination
petition for an independent candidate under G. L. c. 53, § 7, are
required to set forth the reason for such rejection. [684-685]

Two CIVIL ACTIONS commenced in the Superior Court on
July 28, 1976.

The cases were heard by *Mitchell*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

---

[1] The companion case is an action under G. L. c. 30A, § 14, seeking
judicial review of a decision of the State Ballot Law Commission.

The case was submitted on briefs.

*Francis X. Bellotti,* Attorney General, *Thomas R. Kiley & Ernest P. DeSimone,* Assistant Attorneys General, for the defendants.

*Martin C. Gideonse* for the plaintiffs.

HENNESSEY, C.J.   By a previously issued order of this court, we directed the Secretary of the Commonwealth to place the names of the plaintiffs Eugene J. McCarthy and John H. Stouffer[2] on all ballots prepared for the November 2, 1976, general election as independent candidates for the offices of President and Vice President of the United States, respectively. Due to the extreme time constraints imposed by the impending election and the advance time necessary to prepare ballots, we issued an order without opinion. We now issue this opinion to explain the reasoning which led to our order and to answer the serious questions raised by McCarthy with respect to ballot access by independent candidates.

The facts of these cases demonstrate that McCarthy apparently complied with the statutory requirements by obtaining more than the requisite number of signatures for obtaining a place on the general election ballot but was nevertheless burdened further with the massive and difficult, if not impossible, task of proving the validity of a sufficient number of those signatures. The burden of rechecking large numbers of signatures within the severe time constraints imposed by the electoral process is such that we hold herein that the Legislature did not intend to impose such an indefensible burden on the candidate. This conclusion is particularly evident in a case such as this one where there is no evidence regarding the reasons

---

[2] The two other plaintiffs are Michael B. McInerney, State campaign coordinator for these candidates and a candidate for elector on their behalf, and Jay J. Hochberg, a registered voter of the Commonwealth. McCarthy and McInerney are the plaintiffs in the companion case.

Throughout this opinion we refer to the plaintiffs simply as "McCarthy."

McCarthy v. Secretary of the Commonwealth.

for rejection of signatures by local registrars and, indeed, no evidence that the registrars fully performed their checking function at all. Given the fundamental importance of affording a fair and reasonable means of ballot access to independent candidates, we further hold that judicial review of the signature certification process is necessary to safeguard the integrity of the electoral process and to effectuate the legislative intent to afford such access. Furthermore, the burden of proof must be placed on the Secretary of the Commonwealth to demonstrate that there were valid reasons for noncertification of signatures, rather than forcing the candidate to negate all potential reasons for rejection for each particular contested signature.

In these cases effective judicial review in the Superior Court was practically possible only because of the cooperation of the Secretary of the Commonwealth with the court, in that the Secretary voluntarily reviewed a large number of voting lists and petitions and entered into a stipulation as to contested signatures. However, as will appear later in this opinion, that stipulation, necessary and helpful though it was toward a resolution of the dispute, still did not entirely relieve McCarthy of the impermissibly heavy burden placed on him.

The sole route to the general election ballot for independent candidates[3] is the procedure specified by G. L. c. 53,

[3] An independent candidate is one who is not affiliated with a political organization recognized in the Commonwealth as a political party. A political organization is deemed a political party for the purposes of the statutes governing ballot access if its gubernatorial candidate in the immediately preceding biennial election for Governor polled at least three per cent of the total vote cast in the Commonwealth for that office. G. L. c. 50, § 1. For the purposes of the November, 1976, general election ballot there were three recognized political parties in the Commonwealth: the American, Democratic, and Republican parties. The official candidates of these parties for the offices of President and Vice President nominated in a national convention are automatically accorded places on the general election ballot. See G. L. c. 53, §§ 70A-70I; G. L. c. 54, § 42. Any other individual candidate or political organization which wishes to place the name of its candidate on the general election ballot must follow the procedures outlined in the text of this opinion to attain a place on the ballot. See G. L. c. 53, §§ 6-10.

§§ 6-10.[4] We summarize that procedure with respect to the specific facts pertaining to McCarthy's quest for ballot status.

To attain a place on the general election ballot, an independent candidate must file with the Secretary of the Commonwealth nomination petitions "signed in the aggregate by not less than such number of voters as will equal two per cent of the entire vote cast for governor at the preceding biennial state election in the commonwealth at large . . . ." G. L. c. 53, § 6, as amended through St. 1973, c. 849. The number of signatures required to attain a place on the November, 1976, ballot was 37,096. The nomination petitions were made available on or about April 6, 1976, twelve weeks prior to the final date for filing signed petitions with the Secretary of the Commonwealth. G. L. c. 53, § 47, as amended through St. 1975, c. 352, § 3. The deadline for filing papers with the Secretary of the Commonwealth was July 6, 1976, seventeen Tuesdays prior to the general election. G. L. c. 53, § 10. Under G. L. c. 53, § 7, the nomination petitions were required to be submitted to the registrars of voters for the municipalities from which signatures had been gathered for the process of certification of the signatures as valid signatures of registered voters at least seven days prior to the final date for filing with the Secretary, in this case, June 29, 1976.

McCarthy submitted approximately 8,000 nomination petitions containing approximately 50,000 signatures to the registrars of voters of approximately 275 municipalities. The municipal registrars must "check each name to be certified by them on the nomination paper and shall forthwith certify thereon the number of signatures so checked which are names of voters both in the city or town and in the district for which the nomination is made, and only names so checked shall be deemed to be the names of

---

[4] We are concerned here only with access to the November general election ballot. The criteria governing places on the presidential primary ballot are contained in G. L. c. 53, § 70E, and have no relevance to the cases now before us.

qualified voters for the purposes of nomination." G. L. c. 53, § 7, as amended through St. 1974, c. 200, § 1.

After certification by the municipal registrars, the petitions were returned to the plaintiffs and filed with the Secretary of the Commonwealth on July 6, 1976, as required by G. L. c. 53, §§ 9-10. On July 9, 1976, the plaintiffs were notified by the Secretary that the petitions submitted to him contained only 34,934 certified signatures, or 2,162 fewer certified signatures than were required by law and that, therefore, the Secretary would not place McCarthy's name on the November ballot. On the same date the plaintiffs filed an objection with the State Ballot Law Commission ("commission") seeking review of the Secretary's refusal to certify the candidacy of McCarthy and Stouffer. Having been notified that a hearing would be held before the commission on July 20, 1976, the plaintiffs sought a continuance based on the time needed to perform the massive task of rechecking the approximately 16,000 noncertified signatures against voter registration lists. The commission granted a continuance until July 23, 1976.

During the period July 9-23, 1976, the plaintiffs reviewed petitions from Boston, Revere, and Brookline. They reviewed approximately 1,257 noncertified signatures and asserted that 419 of these signatures should have been certified in the first instance. At the hearing before the commission the plaintiffs offered to prove these facts and offered to introduce expert testimony regarding the statistical inferences which could be drawn from the data regarding the projected Statewide error rate in noncertification. The commission refused to admit this evidence and found that McCarthy had failed to submit sufficient credible evidence that his petitions contained the required number of certified signatures. The commission therefore ordered that McCarthy's name not be placed on the November ballot.

The plaintiffs thereupon brought two actions in the Superior Court which were consolidated for trial. One action was a petition under G. L. c. 30A, § 14, for judicial

McCarthy *v.* Secretary of the Commonwealth.

review of the decision of the State Ballot Law Commission. The other action was brought pursuant to G. L. c. 56, § 59, which gives this court and the Superior Court general equity jurisdiction to enforce the provisions of the election laws, including the provisions of G. L. c. 53. This action named as defendants the Secretary of the Commonwealth, and John Robinson, chairman of the Boston board of election commissioners, in his individual capacity and as representative of the class of all officials charged with performing the certification procedure under G. L. c. 53, § 7.[5] This action sought injunctive relief ordering the Secretary to place McCarthy's name on the November ballot and a declaratory judgment that McCarthy had met the substantive requirements of G. L. c. 53 or that the provisions of G. L. c. 53 are unconstitutional in that they fail to provide for meaningful review of the actions of local registrars.

The plaintiffs continued the rechecking process and by August 26, 1976, the date of the Superior Court hearing, had rechecked about 10,000, or sixty per cent, of the total number of noncertified signatures, a process which involved rechecking all nomination petitions from eleven municipalities. The cases were heard on the complaint and answer, a statement of agreed facts by the parties, and the introduction of documentary evidence. The statement of agreed facts contained a statement that the defendant had examined the same documents as had the plaintiffs and stipulated that 2,470 signatures were substantially as registered, but not necessarily certifiable. The plaintiffs contended that 2,547 noncertified signatures were certifiable in the first instance. McCarthy campaign workers had spent approximately 800 hours in the performing of this rechecking process.

After a hearing and findings of fact which included a finding that the 2,470 signatures stipulated by the defendants to be substantially as registered were certifiable in the

---

[5] Class certification was denied by the Superior Court on August 26, 1976.

first instance, a Superior Court judge ordered that the names of McCarthy and Stouffer be placed on the November ballot, ruling that McCarthy had met the substantive requirements of G. L. c. 53 and that G. L. c. 53, §§ 7, 11-12, and G. L. c. 6, §§29-32, were unconstitutional as applied in this case because they denied candidates meaningful review of the certification process. The judge dismissed the plaintiffs' appeal under G. L. c. 30A, § 14, from the commission's decision.

The Secretary of the Commonwealth filed a notice of appeal and sought a stay pending appeal, the application for which was denied by the Superior Court judge. A similar application was thereupon filed with this court and subsequently transferred to the Appeals Court for a hearing before a single justice of that court. The cases were submitted to the Appeals Court on the original papers. The Justice of that court allowed the motion for stay of judgment on the ground that no review of the certification process could be had unless the local registrars who had failed to certify signatures were named as defendants and that, therefore, it was unlikely that the Superior Court judgment would be affirmed on appeal. On application of all parties, we granted direct appellate review of the action of the Superior Court judge.

1. We first consider the question whether the State Ballot Law Commission[6] has jurisdiction in this matter. We conclude that it does not.

The scope of the commission's jurisdiction is controlled by G. L. c. 53, §§ 11-12A, 14. Section 11, as appearing in St. 1956, c. 135, provides in relevant part that "[w]hen certificates of nomination and nomination papers have been filed, and are in apparent conformity with law, they shall be valid unless written objections thereto are made. Such objections shall be filed as to state offices[7] with the

---

[6] The State Ballot Law Commission was created by St. 1889, c. 413.

[7] The term "state officer" applies to any office which is voted on by all voters of the Commonwealth at large and also includes county officers and representatives in Congress. G. L. c. 50, § 1.

state secretary . . . . Objections so filed with the state secretary shall forthwith be transmitted by him to the state ballot law commission." This language confers on the commission jurisdiction to consider objections made with respect to papers filed with the Secretary which appear to be a valid nomination and which would entitle the candidate to have his name placed on the ballot by the Secretary if no objection is made. See G. L. c. 54, §§ 40, 41.

Further provisions for filing such objections and hearings before the commission are set forth in G. L. c. 53, § 12, and G. L. c. 6, § 32. General Laws c. 53, § 12, as amended through St. 1943, c. 334, § 7, provides that "[o]bjections to nominations for state offices, and all other questions relating thereto, shall be considered by the state ballot law commission . . . . When such objection has been filed, and . . . transmitted to the state ballot law commission, notice thereof shall be forthwith mailed by said commission . . . to the candidates affected thereby . . . and to any party committee interested in the nomination to which objection is made."

The language of §§ 11 and 12, when those sections are construed together as they must be, clearly supports our conclusion that the commission had no jurisdiction over this dispute. While the words "and all other questions relating thereto" might seem to give the commission jurisdiction over all questions pertaining to nomination petitions, such a reading is inconsistent with the language regarding notice to candidates whose nominations are challenged, which clearly contemplates a situation in which a third party objects to a nomination which has been validated by the Secretary.[8]

---

[8] General Laws c. 53, § 22A, as amended through St. 1975, c. 352, § 2, which governs signatures on initiative and referendum petitions provides that "[o]bjections that signatures appearing on an initiative or referendum petition have been forged or placed thereon by fraud and that in consequence thereof the petition has not been signed by a sufficient number of qualified voters actually supporting such petition" may be filed with the Secretary of the Commonwealth and referred to the commission for investigation and hearing. No analogous provision appears in the statutes governing nomination petitions, but it is illustra-

Further support for the proposition that the commission is without jurisdiction in this matter is found in G. L. c. 6, § 32, as amended through St. 1964, c. 259, which specifies the powers and duties of the commission as follows: "It may summon witnesses, administer oaths, and require the production of books and papers at a hearing before it upon any matter within its jurisdiction.... The decision of the commission upon any matter within its jurisdiction shall be final. The commission shall render a decision on any matter referred to it, pertaining to certificates of nomination or nomination papers for any presidential or biennial state primaries or any biennial state election... not later than five o'clock in the afternoon on the fourteenth day after the last day fixed for filing objections to such certificates or papers... under chapter fifty-three.... In the event that said commission fails to render its decision within the time herein required on any matter so referred, the state secretary shall, notwithstanding such failure, proceed forthwith to cause to be printed the ballots for such primaries or elections." Section 32 orders the Secretary to prepare ballots impliedly containing the name of the challenged nominee if the commission fails to render a decision on *any* matter before it within the statutory time limit. Such a remedy for commission delay is, of course, appropriate only if the objection pending before the commission is to a nomination which, as provided in G. L. c. 53, § 11, is in apparent conformity with the law and not to a situation like McCarthy's in which the papers before the Secretary indicate that the attempted nomination did not meet statutory requirements. Similarly, that portion of § 32 which specifies those time limits suggests that an objection under c. 53 is a necessary step in bringing a matter before the commission.

While a procedure which provided meaningful administrative review of failure to nominate where noncompliance

---

tive that the objections authorized by this section are also to petitions submitted to the Secretary which apparently conform to statutory requirements.

by local or State officials with the State election laws is alleged might well be beneficial and desirable, we cannot find a legislative intent in the applicable statutes to extend the jurisdiction of the commission beyond objections to apparently valid nominations. The legislative scheme is designed to allow persons having knowledge of fraud or other irregularities in the nomination process to come forward and file their objections with the commission in order to protect the public from election law violations and to safeguard the election process from fraud.[9] See, e.g., G. L. c. 53, § 12A. Cf. *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 276-278 (1932). Nothing in these statutes confers jurisdiction on the commission to consider candidates' objections that they ought to be considered nominated when their papers are in apparent nonconformity and, indeed, such a reading explicitly conflicts with the clear meaning of much of the language of these statutes. We can find no case in which the jurisdiction of the commission has been invoked to review such an objection.[10]

Furthermore, it is unnecessary to find jurisdiction in the commission in order to afford aggrieved candidates a means of obtaining review of the actions of local registrars. With or without a finding of jurisdiction in the commission, the Superior Court has broad equity power to enforce the election laws under G. L. c. 56, § 59, and could, therefore,

---

[9] In *Madden* v. *Secretary of the Commonwealth,* 337 Mass. 758, 764 (1958), we stated that "[t]he legislative purpose is clear that so far as possible disputed nominations shall be settled early before the time for printing the ballots. To this end the ballot law commission has been created with power to summon witnesses, to require the production of books and papers, to administer oaths, and to render a decision which shall be final upon any matter within its jurisdiction; but to render that decision within a prescribed time, otherwise the Secretary shall cause to be printed the ballots."

[10] The traditional method of obtaining review of a failure on the part of local registrars to certify signatures on both nomination and initiative and referendum petitions has been by writ of mandamus against the local registrars. See, e.g., *Wallant* v. *Registrars of Voters of Brockton,* 360 Mass. 853 (1971); *Sharpe* v. *Registrars of Voters of Northampton,* 342 Mass. 620 (1961); *Carpenter* v. *Registrars of Voters of Marlborough,* 327 Mass. 183 (1951); *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230 (1946).

conduct a completely de novo hearing with respect to the dispute regardless of the action taken by the commission.[11] Particularly given the complicated nature of disputes regarding failures to certify, the stringent time limitations within which the commission must render its decision, and the relatively brief span of time between the petition filing deadline and the time when the ballot preparation process must begin, one single review procedure before the Superior Court seems the more appropriate mechanism. This is especially true in light of the grave doubts raised by McCarthy with respect to the ability of the commission to afford any meaningful review of failure to certify disputes since it has no power to order registrars to recheck petitions or to certify previously noncertified signatures. The only relief available in such cases is an order to the Secretary of the Commonwealth to place the candidate's name on the ballot if his petitions were in fact in compliance with statutory requirements, and a court may appropriately grant such relief under G. L. c. 56, § 59, in the first instance rather than require two separate proceedings which may be entirely duplicative.

2. The appropriate method for obtaining review of whether noncertified signatures on nomination petitions should have been certified by local registrars under G. L. c. 53, § 7, is by bringing an action under G. L. c. 56, § 59.[12] We next consider the question what parties must properly be brought before the court as defendants in such an action in order for the court to afford appropriate relief if it

---

[11] The Superior Court is not limited by the restriction on the scope of judicial review of administrative action contained in the State Administrative Procedure Act, G. L. c. 30A. The broad equity powers given to the court by G. L. c. 56, § 59, override those limitations on the scope of judicial review, and most significantly override those provisions limiting the court to consideration of the record before the administrative agency, G. L. c. 30A, § 14 (5), and the limitations as to grounds for overturning an agency decision, G. L. c. 30A, § 14 (7).

[12] General Laws c. 56, § 59, as appearing in St. 1946, c. 537, § 11, provides that "[t]he supreme judicial and superior courts shall have jurisdiction at law, in equity or by mandamus to enforce the provisions of chapters fifty to fifty-six, inclusive. . . ."

is found to be warranted by the evidence. The defendants in this case argue, and the Justice of the Appeals Court ruled, that such an action may not be maintained under G. L. c. 56, § 59, unless the local registrars whose actions are challenged are joined as defendants. We conclude that the proper defendant in such a proceeding is the Secretary of the Commonwealth and that the local registrars are not necessary parties.

The local registrars are given by G. L. c. 53, § 7, a single, discrete function to perform in the process of nomination by petition, that of comparing petitions submitted to them with the official lists of registered voters and certifying those signatures which are the signatures of registered voters of the municipality. They have that single function to perform, and once it is performed they have no continuing duty. By statute, G. L. c. 53, § 7, registrars can review petition signatures only once; "[n]ames not certified in the first instance shall not thereafter be certified on the same nomination papers." Once the registrars have completed their certification and returned the petition to the candidate for submission to the Secretary of the Commonwealth, their function is at an end. Section 7 completely bars registrars from reversing their positions on particular signatures after they have refused once to certify them.

No officer, administrative body, or court may order registrars to certify particular signatures. G. L. c. 53, § 7. However, unlike the Secretary of the Commonwealth and the commission which have no power to review the decision of the registrars to certify or not to certify a particular name, see, e.g., *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 239 (1946); *Compton* v. *State Ballot Law Comm'n,* 311 Mass. 643, 657, 659 (1942), a court may review the certification process under G. L. c. 56, § 59. While it may not order registrars to certify initially noncertified signatures, it may find that particular signatures should have been certified and, if the number so found to have been certifiable in the first instance is sufficient to complete the total number of signatures required for nom-

ination, it may order the Secretary of the Commonwealth to place the candidate's name on the ballot. The Secretary is charged by statute, G. L. c. 54, § 40, with preparation of all ballots to be used in the election of State officers; ballots must "contain the names of all candidates duly nominated for election . . . ." G. L. c. 54, § 41, as amended through St. 1974, c. 380, § 2.

No purpose would be served by joining the registrars as defendants. The Secretary of the Commonwealth has custody of the nominating petitions; any documents needed from particular local registrars may be brought in by subpoena. As will be developed in the next section of this opinion, the registrars whose actions are disputed may be brought in as witnesses to explain their reasons for noncertification. Neither the Secretary of the Commonwealth nor the registrars have any interest in blocking ballot access to bona fide candidates, and hopefully such litigation might be conducted as a cooperative venture to determine the truth of the matter.

3. We now discuss certain elements of the proceedings before the Superior Court which are necessary to ensure meaningful review of the actions of local registrars in the certification process. The legislative concern for safeguarding the electoral process from fraud, negligence, or other systemic malfunction is evident throughout the State election laws, and we conclude that the Legislature did not intend to leave the final determination whether a particular candidate would have access to the general election ballot within the sole unreviewable discretion of local registrars.

McCarthy does not challenge the constitutionality of the substantive requirements of G. L. c. 53, §§ 6-10, for independent candidate access to the ballot.[13] However, he does raise serious questions with respect to the constitu-

---

[13] The substantive requirements of G. L. c. 53 have been repeatedly upheld by this court and the United States District Court for the District of Massachusetts. See, e.g., *Opinion of the Justices*, 368 Mass. 819 (1975); *LaRouche* v. *Guzzi*, 417 F. Supp. 444 (D. Mass. 1976); *Socialist Workers Party* v. *Davoren*, 378 F. Supp. 1245 (D. Mass. 1974).

tionality of the extremely heavy burden which was placed on him to prove that he had been duly nominated after having already met the statutory burden of gathering sufficient certifiable signatures on his nomination petitions.[14]

We agree with McCarthy's contention, and we also believe that the Legislature intended that a candidate in McCarthy's position should have opportunity for meaningful judicial review, speedily available, under G. L. c. 56, § 59. We trust that the directives which we set forth in this opinion, particularly in the construction of § 59, will prevent recurrence of the type of impractical or perhaps impossible burden which was visited on McCarthy. Since we construe § 59 to afford full and adequate judicial review, we need not here decide the serious constitutional issues raised by McCarthy.

We begin with the premise that once a candidate has submitted nomination papers to the Secretary of the Commonwealth containing a number of signatures which would presumptively entitle him to a place on the ballot if the signatures were certifiable and which he claims contain a sufficient number of valid signatures to comply with the requirements of G. L. c. 53, § 6, the burden shifts to the Secretary of the Commonwealth to show that the candidate is not entitled to a place on the ballot because fewer

---

[14] The Commonwealth has an important interest "in requiring some preliminary showing of a significant modicum of support before printing the name of a . . . candidate on the ballot . . . ." *Jenness* v. *Fortson,* 403 U.S. 431, 442 (1971). See *Opinion of the Justices,* 368 Mass. 819, 823 (1975). The Legislature has defined that modicum of support which must be demonstrated as two per cent of the Statewide vote for Governor in the preceding biennial election. G. L. c. 53, § 6. The Commonwealth has no interest in further burdening the route to the ballot by denying meaningful review of the certification process. Cf. *Storer* v. *Brown,* 415 U.S. 724 (1974); *Jenness* v. *Fortson, supra; Williams* v. *Rhodes,* 393 U.S. 23 (1968). The Commonwealth must provide "a fair and reasonable avenue for . . . an independent candidate to secure a place on the ballot." *LaRouche* v. *Guzzi,* 417 F. Supp. 444, 448 (D. Mass. 1976). Our construction of the election law statutes to provide for full judicial review of the certification process without undue burden on the candidate who has made a showing of presumptive nomination means that we need not reach the substantial questions raised by McCarthy. However, we cannot say that the burden placed on McCarthy was either fair or reasonable.

than the required number of signatures are in fact certifiable.[15]

As was amply demonstrated by the heavy burden of rechecking which was placed on McCarthy, involving approximately 800 hours to recheck only sixty per cent of the rejected signatures, the task faced by a candidate whose signatures on petitions are erroneously not certified and who has the burden of proving error is difficult in the extreme, if not impossible, under the review structure and time strictures imposed on McCarthy. Indeed, had the Secretary of the Commonwealth not examined the same documents as the McCarthy campaign staff and stipulated that a sufficient number of the initially rejected signatures were substantially as registered to entitle McCarthy to a place on the ballot, it is doubtful that he could have sustained his burden.

The certification process is an important part of the nomination procedure because it guarantees that the support demonstrated by the candidate is support from registered voters who are qualified to vote for that candidate. Certification, while a time-consuming process, involves relatively simple comparison between each signature (including name and address) on the nomination petition and the current official list of registered voters to determine whether the signature is that of a registered voter,[16] that is, whether the signature meets the requirements of G. L. c. 53, § 7. That section provides in relevant part: "Every

---

[15] We do not mean to intimate that the Secretary was in any way at fault in this matter. Contrary to the opinion expressed in the dissent, neither the Secretary nor McCarthy was at fault here. Indeed, earlier in this opinion we commended the Secretary for his cooperation in attempting to make these apparently unmanageable statutes operate in a constitutional manner in the best interest of the public. While we agree that the burden of proof here is a heavy one, we conclude that as between the Secretary and the candidate the Secretary is in the better position to sustain the burden. To place the burden on the candidate would erect too high a barrier to access to the ballot. The question of fault is immaterial in this context.

[16] General Laws c. 53, § 7, provides that a single nomination petition may not contain signatures of voters from more than one municipality.

voter[17] signing a nomination paper shall sign in person, as registered or substantially as registered, and shall state his residence on January the first preceding, or his residence when registered if subsequent thereto, and the place where he is then living, if different with the street and number, if any . . . .[18] [E]very voter may sign as many nomination papers for each office as there are persons to be elected thereto, and no more. . . . [T]he registrars shall check each name to be certified by them on the nomination paper and shall forthwith certify thereon the number of signatures so checked which are names of voters both in the city or town and in the district for which the nomination is made, and only names so checked shall be deemed to be names of qualified voters for the purposes of nomination. . . . For the purposes of this section a registered voter who in signing his name to a nomination paper inserts a middle name or initial in, or omits a middle name or initial from, his name as registered shall be deemed to have signed his name substantially as registered."

Section 7 does not contemplate that the registrars will make any independent investigation, and this court has held that they are precluded from doing so. *Wallant* v. *Registrars of Voters of Brockton,* 360 Mass. 853 (1971). *Sharpe* v. *Registrars of Voters of Northampton,* 342 Mass. 620, 623 (1961). *Compton* v. *State Ballot Law Comm'n,* 311 Mass. 643, 651-652 (1942). What is contemplated by the statute is a simple comparison between the two documents.

The legislative intent to facilitate the certifiability of signatures is demonstrated by a 1971 amendment of c. 53, § 7, by St. 1971, c. 512, § 1, which added the words "or

---

[17] "Voter" means a registered voter. G. L. c. 50, § 1.

[18] This sentence of G. L. c. 53, § 7, was amended by St. 1976, c. 306, which was approved on August 24, 1976, and which, therefore, was not effective at the time the nomination petitions in question were circulated. The amendment changes the address requirement, requiring the voter to state "the address where he is currently living with the street and number, if any, and his address on January the first preceding, if different . . . ."

substantially as registered" and the provision regarding inclusion or omission of middle names or initials. These changes were intended to correct the situation which had developed under the previous statute where registrars were authorized to reject any signature which did not conform exactly to the voting list even though there could be no reasonable doubt that the petition signature was that of a registered voter. See, e.g., *Sharpe* v. *Registrars of Voters of Northampton*, 342 Mass. 620, 623 (1961); *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 239 (1946); *Putnam* v. *Bessom*, 291 Mass. 217, 218-221 (1935).

General Laws c. 53, § 7, is the only statutory provision applying to certification of signatures on nomination petitions. Local certification procedures vary from municipality to municipality. However, there must be some degree of uniformity, and § 7 supplies that uniformity.

Local registrars have no discretion to require more of signatures on nomination petitions than is specified in § 7 or than is necessary to carry out the clear legislative intent of § 7. If the name is signed substantially as it appears on the official register of voters, see G. L. c. 51, § 37, and the correct address is given, the signature must be certified,[19] with two exceptions: one, if the signer had previously signed the nomination papers of another independent candidate for the same office, see G. L. c. 53, § 7, and, two, if the signature is forged or obtained fraudulently.[20]

Recent legislative amendments to G. L. c. 53, § 7, indicate a legislative intent to give the benefit of doubt in favor of validity. See St. 1976, c. 306; St. 1971, c. 512, § 1. The principal objective of election laws is to ensure that the public will may be expressed through the electoral process. *Desjourdy* v. *Registrars of Voters of Uxbridge*, 358 Mass. 664, 668 (1971). *Crosby* v. *Election Comm'rs*

---

[19] Of course, the signature on the petition must be sufficiently legible to allow a comparison to be made.

[20] These are the only two reasons for noncertification which have been suggested to us which go outside what appears on the face of the petition and the official register.

*of Newton,* 350 Mass. 544, 548 (1966). "The regnant design of all election laws is to provide expeditious and convenient means for expression of the will of the voters free from fraud. . . . Election laws are framed to afford opportunity for the orderly expression by duly qualified voters of their preferences among candidates for office, not to frustrate such expression." *Swift* v. *Registrars of Voters of Quincy,* 281 Mass. 271, 276-277 (1932).

We conclude that the Legislature intended that signatures be certified unless the registrars had substantial doubt that the signer was a registered voter of the municipality eligible to sign a nomination petition. Such reasons for noncertification might include, for example, that no such name appears on the official register for the municipality, that the address is incorrect, that the signature is too illegible to enable comparison, or that the name is not signed substantially as registered. With respect particularly to this latter reason, a modicum of common sense is called for in making such determination. If the comparison suggests little doubt that the signer and the registered voter are in fact the same person, the name should be certified unless some other valid reason for noncertification appears.[21]

Given the legislative preference for nomination once the required modicum of support is demonstrated, the burden cannot reasonably be placed on the candidate to prove on a line by line basis that noncertified signatures should have been certified in the first instance. The burden of demonstrating that the candidate is not entitled to a place on the ballot must be on the Secretary of the Commonwealth once the candidate's total number of signatures exceeds the number required by law.

The Secretary will be aided by our further conclusion

_____

[21] For example, a petition signature as "Joe Jones, 125 Maple St.," and a register listing as "Joseph A. Jones, 125 Maple St.," would suggest little doubt that the signer is a registered voter, while a petition signature as "Penelope Jones, 125 Maple St.," and a register listing as "Abigail Jones, 125 Maple St.," may raise sufficient doubt whether the signer is a registered voter.

that the Legislature did not intend that local registrars be free to reject signatures without giving the reason for such rejection. If the nomination process is to work as intended, local registrars must apply the certification criteria set forth in this opinion[22] and develop a system by which reasons for rejection may be indicated on the petition for each noncertified signature.

We do not believe that this requirement will place an undue burden on registrars. One possible system would be to develop shorthand notations for the most common reasons for rejection (for example, not a registered voter, incorrect address), and a shorthand category for all other reasons, and to place the appropriate symbol next to the rejected signature. This requires little or no extra work for registrars because even without such a notation system, they must still determine that a valid reason for rejection exists. If the local registrars fail to indicate the reason for rejection, this failure may be some, although not conclusive, evidence on which a judge may base a finding that a signature was certifiable in the first instance.

Such notations will greatly facilitate review of the petitions by the candidates and by the Secretary of the Commonwealth. In most cases, the direct comparison of petition and voting list will immediately indicate whether a signature was validly rejected. Also, such a system will guarantee that all signatures are checked against the register and prevent repetition of the apparent nonaction which may have occurred in this case.

In the cases now before us, the defendants stipulated that 2,470 signatures were substantially as registered, but

---

[22] We summarize the valid reasons for noncertification which may be gleaned from the applicable statutes and from our previous discussion as follows: signature on petition not substantially as registered; incorrect address; illegible signature or address; no such registered voter in the municipality; forged signature; signature induced by fraud; signer previously signed nomination papers for same office. We do not intend this list to be exhaustive. Other valid reasons for noncertification may arise, but our conclusions regarding burden of proof in case of dispute would be equally applicable to all purported reasons for noncertification.

not necessarily certifiable. However, they offered no reasons for the failure to certify. A signature which is substantially as registered indicates that the name is that of a registered voter and that, therefore, the signature is certifiable unless other reason is shown. No evidence was offered as to signatures which may have been forged or as to signers who may have also signed other petitions, and the court cannot speculate as to the numbers of signatures which may fall into these categories. Even given the Secretary of the Commonwealth's stipulation, if the burden were on McCarthy to negate all other reasons for noncertification, he would have been unable to prevail. Because of the fundamental issues of fairness and reasonableness present in these cases, we apply the standards with respect to burden of proof which we have set forth in this opinion to the cases now before us. The burden of proof was on the Secretary of the Commonwealth to rebut the presumption of validity created by his stipulation. He failed to sustain this burden, and it follows that the ruling of the trial judge that McCarthy had met the substantive requirements of G. L. c. 53 was correct.

In this opinion we have stressed that full and meaningful judicial review of the certification process must be afforded the aggrieved candidate. Failure to afford such review may burden unduly the route to the ballot for independent candidates and run afoul of constitutional requirements. The Legislature may conclude that express statutory provision for a meaningful review mechanism is preferable to the system which we have discussed above. If so, it may address itself to the question by appropriate statutory amendment.

Mr. Justice Reardon participated in the deliberation on this case, but retired before the opinions were issued.

QUIRICO, J., dissenting (with whom Reardon, J., joins). On September 1, 1976, a judge of the Superior Court entered a judgment ordering the defendant Secretary of the Commonwealth (Secretary) to place the names of Mc-

Carthy and Stouffer (plaintiffs) "on the ballots being prepared for the November 2, 1976 elections as candidate[s] for the offices, respectively of President and Vice-President of the United States." On September 14, 1976, the Chief Justice of the Appeals Court, sitting as a single justice, allowed the motion of the Secretary to stay that judgment pending final disposition of his appeal therefrom. On September 28, 1976, this court entered an order which (a) allowed the joint application of the parties for direct appellate review of the Secretary's appeal from the judgment of the Superior Court, and (b) vacated the order of the Appeals Court staying the judgment of the Superior Court. Justice Reardon and I dissented from the order of this court.

The facts agreed on by the parties are set forth in detail in the court's opinion in these cases. A skeletal outline of them sufficient for the purpose of this dissent follows. The plaintiffs desired to have their names appear on the ballot as independent candidates for the offices of President and Vice President in the 1976 general election. To qualify for a place on the ballot they were required by statute (G. L. c. 53, § 6) to file with the Secretary, on or before July 6, 1976, nomination papers bearing no less than 37,096 signatures of qualified voters certified by the registrars of voters of municipalities in the Commonwealth (G. L. c. 53, § 7). On July 6, 1976, they filed with the Secretary about 8,000 nomination papers bearing about 50,000 signatures but only 34,934 of which were certified by the registrars. Because the number of certified signatures on the nomination papers was 2,162 below the number required, the Secretary informed the plaintiffs on July 9, 1976, that their names would not be included on the ballot. Notwithstanding that deficiency in certified signatures, a judge of the Superior Court entered a judgment ordering the Secretary to include the names of the plaintiffs on the ballot. This court, by its order of September 28, 1976, in effect affirmed that judgment, and it has today issued an opinion "to explain the reasoning which led to [the] order and to answer the serious questions raised by [the plaintiffs] with respect

to ballot access by independent candidates." The purpose of my separate opinion is to state the reasons for my dissent from the order when it was entered.

It is my opinion that in all respects material to these cases the Legislature has mandated in detail, by clear and unambiguous language, the various steps and procedures to be followed by persons aspiring to have their names appear on the general ballot as independent candidates for the offices of President or Vice President of the United States, and the duties and responsibilities of the aspirants and of the various public officials in relation thereto. The Secretary is responsible for the first step which is to make nomination papers available to the aspirants. The aspirants are responsible for the next step which is to obtain signatures of voters on the nomination papers and to submit those papers to city or town registrars of voters for certification. The registrars are then responsible for certifying the signatures thereon. After such certification, the aspirants are responsible for the next step which is to file with the Secretary nomination papers containing the statutorily mandated minimum number (in this case 37,096) of certified signatures. The Secretary is responsible for the next step which is to place on the ballot for the general election the names of those aspirants who have filed nomination papers bearing the required number of certified signatures.

It is stipulated that the plaintiffs failed to fulfil their statutory responsibility to file with the Secretary a minimum of 37,096 certified signatures. This court seems to have concluded that the plaintiffs should be relieved of the fatal consequence flowing from that failure on the reasoning that it was due solely to the prior failure, neglect or refusal (herein referred to collectively as "failure") of unidentified registrars of voters to certify many names appearing on nomination papers filed with them by the plaintiffs. The plaintiffs named as defendants only the Secretary and one election official of the city of Boston, alleging that the latter was fairly representative of the class of registrars and clerks of all cities and towns in the

Commonwealth. A motion for the certification of such a class was denied. With that single exception, no judicial proceedings have been brought against any registrars who allegedly failed to certify names on nomination papers.

The court has rescued the plaintiffs from their own failure to file the required number of certified signatures by reading into the election statutes something which is nowhere found therein or intended by the Legislature, i.e., a responsibility on the Secretary to review those signatures which were not certified by the registrars and, if they appear to be signatures of voters "substantially as registered,"[1] then to include them in the number of certified signatures, unless the Secretary, as a defendant in an action brought against him but not against the registrars, can sustain the burden of proving that the registrars lawfully failed or refused to certify them. In thus construing

---

[1] The statement of agreed facts includes the following: "13. The plaintiffs have examined approximately sixty per cent of the non-certified signatures submitted on their petitions and none of those which were certified. They submit that... (2,547) signatures are certifiable but were not certified in the first instance. The defendants... have examined the same documents and stipulate that... (2,470) signatures are substantially as registered, but not necessarily certifiable." Those two figures were specifically agreed to relate to ten cities and towns other than Boston. In the judge's purported "Findings of Facts, Rulings of Law and Order for Judgment," he included verbatim the first sentence quoted in this footnote from the statement of agreed facts, but not the next two sentences. In lieu of those two sentences, he said: "At least 2,470 signatures of those examined are substantially as registered, *and were certifiable in the first instance*" (emphasis supplied).

It is open to serious doubt whether the judge had anything before him which permitted the conversion of the clear and unresolved disagreement of the parties on the question whether the uncertified signatures were certifiable into a purported express finding that the signatures in question were certifiable in the first instance. This doubt is of even greater dimensions by reason of the fact that the judge made no reference whatever in his decision to the following portion of the agreement of the parties: "14. In the City of Boston, plaintiffs examined... (4,809) non-certified signatures and claim... (1,135) of those signatures were certifiable in the first instance.... The defendants concede that... (1,107) of those signatures are substantially as registered, but not necessarily certifiable."

The situation described above raises grave doubts whether the plaintiffs would be entitled to any relief even if they had joined all of the registrars of voters as defendants, but that is not the primary basis of this dissent.

the present statutes, the court has relieved the plaintiffs of the burden of proving irregularities which they allege were committed by local registrars of voters, and it has imposed the almost impossible burden of proving the contrary on the Secretary who had no part in committing the irregularities and has no responsibility for reviewing the acts of the registrars. I do not question the power of the Legislature to enact a statute to that effect, but I cannot agree that it has done so or that it intended to do so by any statute now in effect. I further do not agree that this court can or should bring about that result by judicial interpretation of the existing statutes.

I agree with the implicit holding by the court that alleged unlawful failure of local registrars of voters to certify proper voters' signatures on nomination papers is judicially reviewable, and that an action under G. L. c. 56, § 59, is an appropriate proceeding by which to obtain such review notwithstanding the fact that historically such relief has commonly been sought by petitions for writs of mandamus or for writs of certiorari (see cases cited in n.10 of the court's opinion in these cases).

However, I am not able to agree with the statement by the court that in a case such as this "[t]he only relief available ... is an order to the Secretary ... to place the candidate's name on the ballot if his petitions were in fact in compliance with statutory requirements" even though lacking the required number of certified signatures. Neither am I able to agree with the further statement of the court that in a case such as this "the proper defendant ... is the Secretary ... and that the local registrars are not necessary parties."

In short, today's opinion would appear not only to constitute an unwarranted reading of our election laws, but also to place on the Secretary of the Commonwealth a legislatively unintended and unmanageable burden.