## 36807. ANDERSON et al. v. POYTHRESS.

PER CURIAM.

Presidential candidate John Anderson appeals from the superior court's denial of his application for a writ of mandamus to compel the Secretary of State to accept his nomination petition and to place his name on the general election ballot pursuant to Code Ann. § 34-1011 (c).

The essential facts were stipulated by the parties. In order for Anderson to have his name placed on the November 4, Georgia general election ballot by nomination petition, he had to submit a total of 57,539 valid signatures of registered voters. Anderson submitted a nomination petition to the Secretary containing 70,649 signatures. Of the total submitted, 16,170 signatures were found by the Secretary to be invalid. These signatures were declared invalid for any of ten reasons such as the signatory was not a registered voter (14,560 signatures invalid) or the name was illegible (774 invalid). After the Secretary completed his review, Anderson's petition contained 54,479 valid signatures. This was 3,060 signatures short of the total needed for Anderson to have his name placed on the ballot.

The superior court, after a hearing, upheld the Secretary's determination that 16,170 signatures were invalid. The court found that there was no abuse of discretion by the Secretary in the verification process and that Anderson had failed to demonstrate that he had obtained the requisite number of valid signatures. On appeal, Anderson asserts that the superior court erred in placing upon him burden of proving that the invalidated signatures were in fact valid and in its holding that Anderson had failed to carry this burden of proof. We affirm.

1. Anderson's application for mandamus is a civil action filed pursuant to Code § 34-1011 (c). It is well established that in a civil action the plaintiff has the burden of proof at trial. *Kimsey v. Rogers,* 166 Ga. 176 (142 SE 667) (1928); Code Ann. § 38-103. It has also been held that the party challenging the action of a public official has the burden of proof. See *Beckham v. Gallemore,* 147 Ga. 323 (93 SE 884) (1917). Similarly, in a quo warranto action to remove a public official from office, the burden of proof must be carried by the plaintiff. *Grimsley v. Morgan,* 178 Ga. 40 (172 SE 49) (1933). See generally 31A CJS Evidence §§ 104 et seq.

Despite this generally accepted rule, Anderson argues that he does not have the dual obligations of submitting the required signatures and of proving their validity "after the state failed in its administrative efforts to do so." (Appellant's brief, p. 5.) Such an argument misses the mark. This is not a situation where the state has

failed to determine the validity of the signatures. Rather, the state has reviewed the signatures and has categorically determined that over sixteen thousand signatures were invalid; fourteen thousand were invalid because they were not signatures of qualified registered voters as specifically required by Code Ann. § 34-1010. Once the Secretary makes a specific determination of the validity or invalidity of each signature on a nomination petition and rejects that petition because it does not contain the requisite number of valid signatures, we believe the burden of establishing that the Secretary erred in his determination is upon the political candidate.

Appellant relies upon the case of McCarthy v. Secretary of the Commonwealth, 371 Mass. 667 (359 NE2d 291) (1977), to support his position, but we believe that this case illustrates the correctness of the procedures undertaken by the Secretary here. The procedures followed by the Secretary provided a specific reason for rejecting a signature as invalid. This is the exact process called for in the McCarthy case, and "it guarantees that the support demonstrated by the candidate is support from registered voters who are qualified to vote for that candidate." McCarthy, 359 NE2d at 301. Thus, McCarthy lends support to the Secretary's methodology by its holding that a nomination petition cannot be rejected unless reasons are given for the invalidation of the signatures by the individuals conducting the verification process. Since the Secretary provided these reasons, we now hold that the burden of demonstrating that the determinations were incorrect was upon plaintiff Anderson.

2. Anderson also argues in the alternative that he carried the burden of proof by showing some errors in the determinations made by the Secretary (approximately 44 signatures previously invalidated were credited to Anderson) and by obtaining oral statements from several persons that they were registered voters despite the Secretary's determination (in a sample by appellant, 45% of 308 persons among the 14,605 persons determined not to be registered voters claimed they were in fact registered). We recognize the time exigencies under which this case was appealed from the superior court, and the constraints placed upon the appellant thereby, but we cannot say that the superior court's decision was not authorized by the evidence. See Hallford v. Banks, 236 Ga. 472 (224 SE2d 35) (1976). In addition, the statute requires the Secretary of State to verify the signatures on a petition. The statute does not mandate a particular method for the verification. Since the statute does not specify the method of verification, it obviously follows that the Secretary of State has the duty of making this decision. In making this decision, the Secretary of State must exercise his discretion in determining which method can reasonably be expected to operate in

a thorough and professional way so as to produce accurate results. We cannot find based on the facts in evidence that the determination of the Secretary of State was an abuse of the discretion exercised or that his determination was incorrect.

We are aware that it is an important element of the electoral process to have all eligible candidates on the ballot. The statutory scheme for nomination by petition provides a minimal requirement that a statewide candidate obtain the signatures of 2-1/2% of the state's registered voters in order to appear on the ballot. This procedure was found to be constitutional in Jenness v. Fortson, 403 U. S. 431 (91 SC 1970, 29 LE2d 554) (1971). We believe that there is a valid state interest in requiring compliance with this statute. If any candidate fails to satisfy the 2-1/2% requirement, and if the Secretary of State indicates the reasons for rejecting or invalidating the signatures on the petition, then it is proper, in the absence of sufficient contrary evidence, to exclude that candidate from the printed ballot.

*Judgment affirmed. Undercofler, C. J., Clarke, J., and Judge Lamar Knight concur. Judge Marion T. Pope, Jr., concurs specially. Nichols, Bowles and Marshall, JJ., dissent. Jordan, P. J., and Hill, J., disqualified.*

Decided September 25, 1980.

*Glass & Fitzgerald, Russell S. Thomas, Rogovin, Stern & Huge, Mitchell Rogovin, Joel I. Klein, H. Bartow Farr, III, Jennifer Freeman,* for appellants.

*Arthur K. Bolton, Attorney General, Don A. Langham, First Assistant Attorney General, Michael J. Bowers, Senior Assistant Attorney General,* for appellee.

Pope, Judge, concurring specially.

Georgia law provides that nominations of candidates for public office may be made by nomination petitions signed by electors and filed with the Secretary of State. Code Ann. § 34-1010. The petition is required by law to contain the signatures of duly qualified and registered electors of the State and a petition will not be permitted to be filed if it does not contain a sufficient number of such signatures. Code Ann. § 34-1011 (a) (iii).

In the present case 57,539 names were required on the nomination petition, as stipulated by the parties. This is in compliance with Georgia election law which mandates that the number of electors signing the petition be not less than two and one-half percent of the total number of electors eligible to vote in the

last election for the filling of the office the candidate is seeking. Code Ann. § 34-1010 (b).

Once a nomination petition has been presented to the Secretary of State, the Secretary has the statutorily imposed duty to examine the petition to the "extent necessary to determine if it complies with the law." Code Ann. § 34-1011 (a). Following the examination of the petition the Secretary is required to place the name of the candidate on the election ballot if the petition bears the required number of signatures of duly qualified and registered voters. If, however, following the examination of the petition, it is determined by the Secretary of State that the petition fails to comply with the law, the petition shall be denied and the candidate notified of the cause of such denial. Code Ann. § 34-1011 (b).

In the present case the petition fails to comply with the law primarily because of its failure to contain a sufficient number of signatures of qualified and registered voters. Of the 16,170 signatures found by the Secretary to be invalid, 14,560 were designated as such because the signatory was not a registered voter.

The decision of the Secretary of State in denying a nomination petition may be reviewed by the Superior Court by an application for a writ of mandamus. Code Ann. § 34-1011 (c). The mandamus action must be filed within five days of the time the petitioner is notified of the denial of his petition and a hearing date shall be fixed by the trial judge as soon as practicable. Code Ann. § 34-1011 (c). Under Georgia law a suit of writ of mandamus may issue to compel a due performance by an official who fails to perform or improperly performs his official duties. Code Ann. § 64-101.

The burden of persuasion or the duty of establishing the issues in the case is generally upon the plaintiff in a mandamus action. The plaintiff must carry that burden by a preponderance of the evidence. This should be distinguished from the burden of producing evidence which is the duty of going forward with the presentation of evidence or of making a prima facia case. Agnor's Ga. Evidence § 17-2. It is the burden of producing evidence which may shift during the trial, unlike the burden of persuasion which is set by the pleadings.

Anderson argues that the burden of persuasion should not have been on him, but instead on the Secretary of State. But even assuming that the Secretary of State had the burden of persuasion that the signatures were invalid, once the evidence was produced by the Secretary to make out a prima facia case that the signatures were not of registered voters, Anderson would then have the burden of producing evidence to counter the Secretary's prima facie case and avoid a directed verdict. In other words no matter which party has the burden of persuasion, Anderson must still produce evidence as to the

validity of the signatures or as to the abuse of discretion of the Secretary of State by invalidating those signatures in order for the court to issue a mandamus.

The burden placed on the candidate is to present evidence which negates the reason for which a particular signature was rejected from the petition. In this case, where the majority of the signatures were rejected as being those of unregistered voters, the plaintiff merely has to show that 3,060 were in fact registered voters.

In my opinion a presentation to the court of the official voter registration lists of a county indicating that the invalidated signatures were those of registered voters is not an impossible or onerous burden on the candidate.

The court in checking the signature of the person against the registration records may find that particular signatures should have been certified by the Secretary of State and if the number so found to have been certifiable in the first instance is sufficient to complete the total number required for nomination, it may order the Secretary of State to accept the petition and thereby the candidate's name would appear on the ballot. I am not able to agree that a candidate's name should be placed on the ballot if in fact he did not comply with the statutory requirements.

The evidence presented in this case does not support a finding that the requirements of the statute were met, therefore I must concur in the judgment of the court.

NICHOLS, Justice, dissenting.

Presidential candidate John Anderson appeals from the superior court's denial of his application for a writ of mandamus to compel the Secretary of State to accept his nomination petition and to place his name on the general election ballot.

The essential facts were stipulated by the parties. Anderson needed 57,539 valid signatures of registered voters on his nomination petition in order to have his name placed on ballots prepared for the November 4, 1980, Georgia general election. On July 9, 1980, he submitted 70,649 signatures, but 16,170 of these were found by the Secretary to be invalid. The majority of signatures (14,650) were invalid because the signer was not a registered voter. Thus, Anderson was 3,060 signatures short of the required number.

On September 8, 1980, five days after being notified by the Secretary of the insufficient number of signatures, Anderson applied to the superior court for a writ of mandamus pursuant to Code Ann. § 34-1011 (c). On September 12, after a hearing, the superior court upheld the Secretary's determination that 16,170 signatures were invalid. The court found that there was no abuse of discretion by the

Secretary in the verification process and that Anderson had failed to demonstrate that he had obtained the requisite number of valid signatures.

Code Ann. § 34-1010, the statute which permits a candidate to obtain nomination for public office by submitting a nomination petition to the Secretary of State, was held not to violate the First and Fourteenth Amendments of the U. S. Constitution in Jenness v. Fortson, 403 U. S. 431, 442 (1971). The Court held that there was "surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a . . . candidate on the ballot." In another case from this state the Supreme Court stated: "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights . . . are illusory if the right to vote is undermined." Wesberry v. Sanders, 376 U. S. 1, 17 (84 SC 526, 11 LE2d 481) (1964). The resulting synthesis of these two views is that the important state interest of requiring that a candidate show a modicum of support before being placed on the ballot must not be achieved at the expense of depriving voters of their right to vote for the candidate of their choice. "The right of . . . an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters . . . [T]he right to vote is 'heavily burdened' if that vote may be cast only for one of two candidates . . . . at a time when other candidates are clamoring for a place on the ballot." Lubin v. Panish, 415 U. S. 709, 716 (94 SC 1315, 39 LE2d 702) (1974). Thus, given the constitutionality of Code Ann. § 34-1010 on its face, we must now consider whether the application of the statute in this case resulted in an accurate and valid determination that Anderson's name not be placed on the ballot. See generally Storer v. Brown, 415 U. S. 724 (94 SC 1274, 39 LE2d 714) (1974) and Williams v. Rhodes, 393 U. S. 23 (1968).

Under Code Ann. § 34-1011, the Secretary is required "expeditiously to examine the petition *to the extent necessary* to determine if it complies with the law." (Emphasis supplied.) In performing the difficult task of examining Anderson's petition comprising some 13,000 pages and containing over 70,000 signatures, the Secretary adopted "guidelines" and "procedures" to be followed by individual investigators who had the responsibility of verifying the signatures at the county level. Anderson submitted his petition on July 9, 1980, and the verification process took place during July and August. In September the Secretary notified Anderson that his nomination petition had been denied. Under the statute, Anderson then had five days to bring his application for mandamus, seeking a review of the Secretary's determination.

It is apparent that severe time constraints were placed upon Anderson, and, no doubt, his ability to challenge all of the Secretary's invalidations was adversely affected. Nevertheless, Anderson was able to prove, and the Secretary agreed by stipulation, that ten signatures "previously invalidated as being listed within the wrong county" were actually valid. Anderson was also given credit for thirty signatures incorrectly invalidated by the Secretary because there was "no signature to compare." Four additional signatures were credited to Anderson by the Secretary after his search of Clayton County registration records for July 8, 1980, disclosed that these voters had recently registered. These latter two corrections were also stipulated by the parties. In addition to the above, it is undisputed that the Secretary's rechecking of his initial count of the total signatures resulted in an upward revision in favor of Anderson of 1,262 signatures. While this revision and the changes in the other forty-four signatures do not establish that Anderson is entitled to be placed on the ballot, they are significant from the viewpoint that they conclusively demonstrate the existence of some incorrect determinations in the verification process.

Even more significant, however, is the inconsistent methodology utilized by individual investigators in verifying whether or not the signers of the petition were registered voters. The Secretary's guidelines and procedures for the verification of signatures required that the voter registration cards be checked for a comparison with the names and signatures on the petition. Overall, 14,650 signatures were invalidated as those of unregistered voters. However, it is clear from the record that the investigators used various methods to determine whether or not a person was a registered voter. For example, in Fulton County over 1,000 names which were not found on the computerized voter registration lists were found by checking the registration cards. But, in Chatham County where 858 signers were found not to be registered, the investigator did not check the registration cards at all. In Clayton County, where 486 signers were found not to be registered, the investigators also completely failed to refer to the cards. In Cobb County, where 1,785 signers were found not to be registered, there was no countywide computerized list of registered voters and investigators relied solely on the registration cards. But uncontradicted testimony showed that out of 17 invalidated as not registered, 12 had cards. There was also evidence that in Fulton County, where 5,325 signatures were invalidated, a computerized address list was checked only infrequently. Yet such cross-checking in other counties such as DeKalb County resulted in the validation of previously invalidated signatures.

Thus, it is clear that despite the Secretary's efforts to provide

specific procedures for verification, there was a failure by the individual investigators to follow the established procedure. Yet following a consistent procedure during verification was essential to the accuracy of the process. Moreover, while the voter list is the official list of those permitted to vote (Code Ann. § 34-629), and is prepared from the registration cards (Code Ann. § 34-622), reliance on the list alone or on the registration cards alone, or relying occasionally on both, has obviously resulted in discrepancies and in the invalidation of petition signers who are actually registered voters. See *Collins v. Collins,* 129 Ga. App. 372 (199 SE2d 626) (1973), where voters not on a voter list were permitted to vote.

Viewing these verification procedures, as we must, in light of the fundamental constitutional rights involved, we would hold that Anderson has produced sufficient evidence to place the verification process in doubt. See *Taggart v. Phillips,* 242 Ga. 454 (249 SE2d 245) (1978). Under Code Ann. § 34-1011 (a) the burden should be shifted to the Secretary of State to demonstrate the correctness of his invalidations. The statute is clear in placing the burden on the Secretary to examine the petition "to the extent necessary to determine if it complies with the law." Under the constitutional standards discussed previously, this heavy burden of proof must be met by the Secretary. "To place the burden on the candidate would erect too high a barrier to access to the ballot." McCarthy v. Secretary of the Commonwealth, 371 Mass. 667 (359 NE2d 291) (1977). This is especially true in view of the time limits imposed on Anderson. For if Anderson had to prove in such a short time that 3,060 signatures were valid out of the 16,000 signatures rejected, the task would be an impossible one.

We therefore would hold that after the Secretary's verification process was completed, the burden was placed upon Anderson to show that the process was suspect. Once Anderson made this showing, it became the Secretary's burden to demonstrate that the verification process went to the extent necessary to properly invalidate the petition.

Accordingly, we respectfully dissent with the majority opinion, and we would order that Anderson's name be placed on the November 4, 1980, general election ballot as an independent candidate for the office of President of the United States.

I am authorized to state that Justice Bowles and Justice Marshall join in this dissent.