Four Thousand, Five Hundred Sixty-eight Reg. Voters of Worcester *v.* City Clerk of Worcester.

FOUR THOUSAND, FIVE HUNDRED SIXTY-EIGHT REGISTERED
VOTERS OF WORCESTER[1] *vs.* CITY CLERK OF WORCESTER
& others.[2]

Worcester. May 9, 1984. — July 5, 1984.

Present: WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Elections.*

A city's registrars of voters failed to meet their burden of demonstrat-
ing valid reasons for their noncertification of 4,568 signatures on a
petition for revision of the city charter, where the registrars merely
produced the petition itself, with annotations indicating the reason for
noncertification of each signature, and provided no means of verifying
the declared reasons for noncertification. [426]

CIVIL ACTION commenced in the Superior Court Department
on August 19, 1983.

The case was heard by *Young, J.*

The Supreme Judicial Court granted a request for direct
appellate review.

*James F. Bergin,* Assistant City Solicitor, for the defendants.
*Burton A. Nadler* for the plaintiffs.
*David E. Sullivan,* for the Secretary of the Commonwealth,
amicus curiae, submitted a brief.

NOLAN, J. This action arises from a dispute concerning a
petition for charter revision in the city of Worcester.[3] Stipulated

---

[1] The class comprises those persons who contend that they are registered
voters of the city of Worcester entitled to but denied certification of their
petition signatures. Prior to trial, a judge of the Superior Court ruled that
the plaintiffs have standing to pursue this matter as a class action. The
fifteen individual plaintiffs' names are omitted here for the sake of brevity.

[2] The Worcester registrars of voters, who are responsible for certification
of petition signatures pursuant to G. L. c. 43B, § 3, and G. L. c. 53, § 7.

[3] Charter review or revision is initiated by adherence to procedures set
forth in G. L. c. 43B, § 3.

facts reflect that in July, 1983, a petition for charter review containing 15,327 signatures was submitted to the registrars of voters (registrars). The number of signatures required for inclusion on the November, 1983, ballot was 11,982. The registrars failed to certify 4,568 signatures, resulting in a 1,223 signature shortfall. The plaintiffs brought this action challenging the methods for disqualification employed by the registrars.[4]

At trial the city clerk testified to the efforts employed by the city to maintain accurate voter registration lists and to the registrars' review of each petition signature. The petition in question was submitted in evidence. It showed a notation "N" for "not registered" or "T" for duplicative signatures following each noncertified signature. The registrars then rested.

The trial judge invited the registrars to undertake a line-by-line comparison of the petition signatures with the voting list and to synopsize that evidence. The registrars took the position that it had met its burden and that the judge should complete the line-by-line analysis. The judge undertook a sample analysis of the signatures, finding fifteen of sixty-three challenged signatures to be certifiable.[5] Although doubtful of the sample's statistical validity, the trial judge concluded that the registrars had failed to meet the burden of proof placed on them by *McCarthy* v. *Secretary of the Commonwealth,* 371 Mass. 667 (1977). Inasmuch as independent examination of the petition might cost the parties approximately $15,000 to $20,000, and because time constraints threatened to foreclose inclusion of the petition on the November ballot, he concluded that the in-

---

[4] We thank the office of legal counsel, elections division, of the Department of the State Secretary, for its submission of an amicus curiae brief.

[5] For example, the trial judge found to be certifiable signatures containing first initials only which reasonably correlated with full names and street addresses appearing on the voting list. In view of the lengthy discussion of valid and invalid reasons for noncertification which appears in *McCarthy* v. *Secretary of the Commonwealth,* 371 Mass. 667, 684-685 & n.22 (1977), we are unpersuaded by the registrars' argument that, without more, such signatures "reasonably raise doubt" as to their validity and that noncertification of such signatures will serve the important State interest of preventing fraud.

terests of justice required inclusion of the charter review petition on the ballot, and ordered the entry of judgment to that effect. A single justice of the Appeals Court denied a stay pending appeal. A single justice of this court also denied a stay. We affirm the judgment entered in the Superior Court.

This matter is controlled by our decision in *McCarthy* v. *Secretary of the Commonwealth,* 371 Mass. 667 (1977). There we announced that once a candidate for public office submits in excess of the requisite signatures for inclusion on a ballot, the burden is upon the Secretary of the Commonwealth to demonstrate valid reasons for noncertification of signatures. *Id.* at 668-669, 680-681. We noted that "the Legislature did not intend that local registrars be free to reject signatures without giving the reason for such rejection." *Id.* at 685. We also suggested in *McCarthy* that a system of shorthand notation be employed by the voting officials to indicate their reasons for rejecting certain signatures. *Id.* However, as is apparent from a reading of the *McCarthy* decision, employment of such a system alone will not suffice to complete the registrars' task. We did not there hold, as the registrars argue, that once the petition is presented to the court, the burden of verifying declared reasons for noncertification is cast upon the plaintiff or, as in this case, on the trial judge. The principles enunciated in *McCarthy* as to candidates for public office apply with equal force to petitions for charter review. We perceive no error in the trial judge's conclusion that the registrars could not rest upon mere production of an annotated petition.

The judgment of the Superior Court is affirmed.

*So ordered.*